# IN THE UNITED STATES COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DEREK WAYNE JACKSON** : <br> Petitioner, : <br> : <br> v. : <br> : <br> **BRIAN COLEMAN,** *et al.,* : <br> Respondents. : | CIVIL ACTION NO. 13-5932 |

## MEMORANDUM OPINION

**Rufe, J.**                                                                                           September 3, 2021

Petitioner Derek Wayne Jackson was sentenced to life imprisonment after being found guilty by a Philadelphia Court of Common Pleas jury of first-degree murder, possessing instruments of crime, abusing a corpse, and tampering with or fabricating evidence. Petitioner, represented by counsel, has filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, asserting that the cumulative effect of errors at his trial constituted a denial of due process, and that his counsel was ineffective.

The Petition was referred to Magistrate Judge Timothy R. Rice, who issued a Report and Recommendation ("R&R") recommending that the Court grant an evidentiary hearing on Petitioner's claim that trial counsel was ineffective for failing to present evidence in support of suppressing his confession, and to deny the petition without the issuance of a certificate of appealability on the remaining issues. Petitioner filed objections to the R&R. For the reasons stated below, the Court will schedule an evidentiary hearing on three of Petitioner's ineffective assistance of counsel claims.[1]

---

[1] The Court will defer ruling on Petitioner's remaining claims until after the evidentiary hearing.

I.      **PROCEDURAL HISTORY**[2]

On April 19, 2005, police arrested Petitioner for the murder of his mother. Shortly after the arrest, he was interrogated. Petitioner waived his *Miranda* rights and gave a full confession. Petitioner also informed the detectives that he had been treated for different mental disorders but was not regularly taking his medications.

Before trial, court-appointed counsel obtained an expert, forensic psychiatrist John S. O'Brien, M.D., to diagnose Petitioner's mental health condition and to opine on Petitioner's ability to "understand the nature, object and proceedings against him and participate and assist in his own defense, and whether at the time of the alleged offense, he was able to understand the nature and quality of his acts and whether what he was doing was wrong."[3]

For his evaluation, Dr. O'Brien reviewed Petitioner's medical records—provided by trial counsel—and concluded that Petitioner suffered from schizoaffective disorder with "auditory hallucinations and paranoid ideation and possible delusions."[4] Dr. O'Brien also concluded that Petitioner was competent to stand trial, and, at the time of the offense, "was able to understand the nature, quality and wrongfulness of his acts . . . [but] because of his psychiatric condition . . . was unable to conform his conduct to the requirements of the law."[5]

On August 22, 2005, trial counsel moved to suppress all of Petitioner's statements relating to his confession on the ground that Petitioner suffered from a serious mental illness that

---

[2] The facts and procedural history, as outlined in the R&R, are not in dispute and the court adopts them herein. Doc. No. 64 at 2–8.

[3] *See* 5/23/2005 Motion [Doc. No. 8-7]; 7/15/2005 Order [Doc. No. 8-18]; 9/19/2005 Letter at 1, attached to Amended Post-Conviction Relief Petition [Doc. No. 8-116] at Ex. A.

[4] 9/19/2005 Letter at 6 [Doc. No. 8-116].

[5] *Id.* Dr. O'Brien re-evaluated Petitioner on January 20, 2006, and readopted his diagnosis and opinion that Jackson was competent to stand trial. *See* 1/20/2006 Letter at 1–3, attached to Amended Post-Conviction Relief Petition [Doc. No. 8-116] as Ex. B.

prevented him from understanding his constitutional right to remain silent.[6] Counsel also notified the court that he intended to pursue an insanity defense based on Petitioner's "long-standing and significant history of psychosis including a diagnosis of schizophrenia."[7]

At the suppression hearing, Petitioner was the only person to testify for the defense. Despite corroborating evidence of Petitioner's previous psychiatric hospitalizations and the reports of Dr. O'Brien and several other treating physicians of his significant history of psychosis,[8] trial counsel introduced no medical evidence showing that Petitioner lacked "sufficient mental capacity as a result of his impaired psychiatric state . . . at the time of his questioning to understand that he had a right to an attorney, that he had a right to curtail any questioning, [and] that he had a right to remain silent."[9] It is unclear why trial counsel did not introduce this medical evidence at the suppression hearing, particularly because trial counsel used this same medical evidence to support a notice of insanity defense filed that same day.[10]

Without corroborating testimony from a medical professional, the trial court denied Petitioner's suppression motion. The court stated that Petitioner's testimony did not "call[] into question . . . his ability to understand what was going on" and held that "the facts show that [Petitioner] was alert and responsive to questions when giving his statements. Accordingly, . . .

---

[6] *See* Omnibus Mot. to Suppress [Doc. 8-23] ¶ 4(c).

[7] *Id.* ¶¶ 6, 10.

[8] *See* 9/19/2005 Letter [Doc. No. 8-116].

[9] *See* N.T. Suppression, 1/23/2006 at 72.

[10] Trial counsel filed a notice of an insanity defense on the same day at the suppression hearing noting Petitioner's "long-standing and significant history of psychosis including a diagnosis of schizophrenia" and Petitioner's previous psychiatric hospitalizations. In support of this defense, trial counsel submitted a witness list composed of Dr. O'Brien, several physicians whose treatment of Petitioner is documented in the records counsel provided to Dr. O'Brien, and two of Petitioner's relatives. Omnibus Pretrial Mot., Aug. 22, 2005, at 1–3.

the defendant did knowingly and voluntarily waive his right to the assistance of counsel and his right to remain silent during his custodial interrogation."[11]

Following this ruling, the Commonwealth sought to preclude Petitioner from presenting any psychiatric evidence at trial.[12] Trial counsel did not oppose the motion and stated "I have no evidence to introduce at this time that my client was insane at the time of the alleged commission of the offense, as would be required by the law. In the absence of that, I believe that I cannot introduce evidence that he was guilty but mentally ill."[13] Trial counsel also stated that because Dr. O'Brien had opined that Petitioner was legally sane and competent to stand trial, Petitioner could only pursue a diminished capacity defense if he admitted to the underlying acts, and Petitioner had not "authorized" counsel to do so.[14] Due to trial counsel's concession, the court granted the Commonwealth's motion, finding that Petitioner's refusal to admit liability barred him from presenting psychiatric evidence to support an insanity or diminished capacity defense.[15] The Commonwealth introduced Petitioner's confession at trial.

On direct appeal, Petitioner argued that the trial court erred in denying his motion to suppress. The Superior Court affirmed the conviction and sentence.[16] Petitioner, with newly-appointed counsel, then timely filed a petition under Pennsylvania's Post Conviction Relief Act ("PCRA"). However, Petitioner's PCRA petition did not bring a claim based on the suppression

---

[11] N.T., Suppression 1/23/2006 at 83–84.

[12] *Id.* at 88–90.

[13] *Id.* at 90. A guilty but mentally ill defense requires a jury to find a person guilty of the crime but mentally ill at the time the crime occurred.

[14] *Id.*

[15] *Id.*

[16] The Superior Court concluded that there was "ample evidence" contradicting Jackson's "self-professed mental inability to grasp the nature of the proceedings on the night he gave his confession" and credited Detective Gallen's unrebutted testimony about Petitioner's apparent ability to understand the questions being asked of him during the interrogation. *See Commonwealth v. Jackson*, 1371 EDA 2006 (Pa. Super. 2007) [Doc. No. 8-88] at 8–9.

4

hearing. It only alleged that trial counsel was ineffective for failing to object to the court's tampering instruction or for not moving for acquittal on that charge because the criminal elements read to the jury did not match those contained in the bill of information.[17] The PCRA court dismissed this claim and the Superior Court affirmed.

On October 7, 2013, Petitioner filed a timely *pro se* petition for a writ of habeas corpus in this Court alleging the same claim raised in his PCRA petition—that trial counsel was ineffective for failing to object to the court's tampering instruction. On November 22, 2013, Petitioner supplemented his petition and added the claim that trial counsel was ineffective at his suppression hearing.

On April 14, 2015, the Magistrate Judge appointed counsel to represent Petitioner, and counsel filed an amended petition on July 13, 2015.[18] Counsel later filed a memorandum of law in support of the petition ("MOL"), which consolidated the claims from each of the three previous petitions and included a new report from Dr. O'Brien.[19] This report stated that Petitioner's untreated gross psychotic symptoms were likely to have influenced or interfered with his ability to understand his *Miranda* rights and execute a knowing and voluntary waiver of those rights. Further, Dr. O'Brien stated that this opinion was based on medical records trial counsel had not provided him during Petitioner's first examination and that trial counsel never requested his opinion on Petitioner's mental state at the time of Petitioner's confession.

The Commonwealth filed a response arguing that the only cognizable claim was the ineffective assistance of counsel claim relating to the court's tampering instruction, and that the

---

[17] Amended Post-Conviction Relief Petition at ¶ 42. The PCRA petition did not raise the ineffective assistance of counsel claim relating to the introduction of medical records at the suppression hearing or at trial.

[18] Pursuant to local rule 72.1.IV(c), Petitioner's Habeas petition was randomly assigned to Magistrate Judge Rice for a R&R.

[19] MOL [Doc. No. 63] at 18–19.

other claims were either time-barred or procedurally defaulted. Petitioner argued in reply that his mental illness constituted an extraordinary circumstance that required equitable tolling of his claims.

The R&R identified six claims alleged in the MOL. The claims were that trial counsel was ineffective for failing to: (1) timely present evidence to suppress the confession; (2) offer evidence at trial to discredit the confession; (3) timely object to a jury instruction that contained different elements than the charging information; (4) develop evidence showing Petitioner lacked the specific intent to kill; and (5) seek a mistrial due to prosecutorial misconduct during closing argument.[20] The sixth claim asserted cumulative error.

The R&R recommended that the third ineffective assistance claim be dismissed as meritless and claims two, four, and five be dismissed as time-barred because they were first alleged after the statutory limitations period ended in the amended petition or the MOL. The R&R also concluded that Petitioner's time-barred claims did not relate back to any timely claim, and Petitioner's alleged mental incompetence did not support equitable tolling. However, the R&R recommended an evidentiary hearing be held to determine whether trial counsel was ineffective for failing to present evidence to support suppressing Petitioner's confession. Petitioner filed objections.

## II.   LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petition for a writ of habeas corpus may not be granted as to any claim that was adjudicated on the merits in State court proceedings unless the adjudication "(1) resulted in a decision that was contrary to, or

---

[20] In the MOL, "Claim A" is titled "Trial Counsel was Ineffective for Failing to Investigate, Develop, and Present Evidence that Would Have Caused the Court to Suppress Mr. Petitioner's Inculpatory Statement or Would Have Caused the Jury to Reject the Statement." The Magistrate Judge treated this as two separate claims, which were divided into numbers one and two in the R&R.

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[21]

Under AEDPA, "a district court shall entertain an application for a writ of habeas corpus [filed on] behalf of a person in custody pursuant to the judge of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."[22] Where, as here, the petition is referred to a magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), a district court will conduct a *de novo* review of "those portions of the report or specified proposed findings or recommendations to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[23]

### III. DISCUSSION

Petitioner objects to the R&R's finding that his untimely claims do not relate back to his timely filed claims.[24] Petitioner also raises three objections to the R&R on equitable tolling grounds: (1) the Magistrate Judge failed to consider equitable tolling on a claim-by-claim basis; (2) the Magistrate Judge failed to consider the totality of the circumstances when assessing Petitioner's mental incompetency as grounds for equitable tolling; and (3) the Magistrate Judge

---

[21] 28 U.S.C. 2254(d).

[22] 28 U.S.C. § 2254(a).

[23] 28 U.S.C. § 636(b)(1).

[24] Doc. No. 69 at 7–8.

was wrong to find that a misunderstanding or ignorance of the law by an inmate assisting Petitioner rendered equitable tolling unavailable.[25]

### A. Relation Back

As an initial matter, the Court must consider whether Petitioner's untimely claims relate back to his timely filed claims.[26] Petitioner timely filed his PCRA petition on December 3, 2007, which was 109 days after his criminal judgment became final. This filing tolled the limitations period through April 3, 2013, the day the Pennsylvania Supreme Court denied review of Petitioner's PCRA petition. From that date, statutory tolling left Petitioner with 256 days to file his federal habeas petition—which would set the limitations period closing date at December 6, 2013. Petitioner filed his *pro se* petition and supplemental petition within that limitations period on October 7, 2013. On April 14, 2015, the Magistrate Judge appointed counsel to represent Petitioner, and on July 13, 2015, counsel filed an amended habeas petition, raising multiple claims for the first time. The R&R concluded that these additional claims were untimely and did not relate back to Petitioner's timely filed claims.[27]

Under Rule 12 of the Rules Governing Section 2254 Cases, the Federal Rules of Civil Procedure may be applied in habeas cases to the extent that the civil rules are not inconsistent with any statutory provisions or the habeas rules. "The Civil Rule governing pleading amendments, Federal Rule of Civil Procedure 15, made applicable to habeas proceedings by § 2242, Federal Rule of Civil Procedure 81(a)(2), and Habeas Corpus Rule 11,[28] allows pleading

---

[25] Doc. No. 69 at 6.

[26] Doc. No. 64 at 11 n.12.

[27] Doc. No. 64 at 9–15.

[28] Rule 11 was re-designated as Rule 12 in 2009.

amendments with 'leave of court' any time during a proceeding."[29] Amendments made after the statute of limitations has run will relate back to the date of the original pleading if the original and amended pleadings "ar[i]se out of the conduct, transaction, or occurrence."[30] Thus, the timeliness of the claims first raised in the MOL depends on whether they "relate back" to one of the two claims that were timely filed in his original petition.[31]

In *Mayle*, the Supreme Court examined the relation-back doctrine in the context of a habeas case.[32] There, the petitioner asserted a Sixth Amendment challenge in his initial petition, arguing that his right to confront an adverse witness had been violated by admission of videotaped statements made by a jailhouse informant.[33] The petitioner then sought to amend his petition and add a claim that his Fifth Amendment right against self-incrimination had been violated by the introduction of statements he had made during a pretrial police interrogation.[34]

Although both claims related to the admission of pretrial, out-of-court statements, the Supreme Court held that those statements were "separated [from each other] in time and type."[35] The Supreme Court explained that the petitioner had defined "ar[ising] out of the conduct, transaction, or occurrence" for relation-back purposes at "too high a level of generality."[36] It is not enough for two claims to merely arise from the same "trial, conviction, or sentence" to satisfy the relation-back standard.[37] In order to properly relate to one another, the

---

[29] *Mayle v. Felix*, 545 U.S. 644, 655 (2005) (citing Fed. Rule Civ. P. 15(a)).
[30] Fed. Rule Civ. P. 15(c)(2).
[31] *Mayle*, 545 at 650.
[32] *Id.* at 644.
[33] *Id.* at 650–51.
[34] *Id.* at 651–52.
[35] *Id.* at 657.
[36] *Id.* at 661.
[37] *Id.* at 657.

claims in the amendment and the claims in the original petition must be "tied to a common core of operative facts."[38]

Here, Petitioner asserts in the objections that his second ineffective assistance claim—trial counsel's failure to offer evidence at trial to discredit the confession—relates back to his first because both claims relate to trial counsel's ineffectiveness in failing to introduce Petitioner's medical records to suppress his confession.[39] Petitioner also argues that his fourth ineffective assistance claim—trial counsel's failure to develop evidence showing Petitioner lacked the specific intent to kill—relates back because the evidence would have included Petitioner's same medical records and their introduction could have precluded the jury from finding that Petitioner was able to form the specific intent necessary for a first-degree murder conviction.[40]

Both claim one and claim two arise from the same core facts—that trial counsel was ineffective for failing to use evidence of Petitioner's mental illness to contest his confession both at the suppression hearing and at trial. Both claims rely on the fact that counsel had available significant evidence of Petitioner's past mental illness and did not use it to first contest the admission of the confession then later to attack the credibility of the confession at trial. Under *Mayle,* these claims are tied to a common core of operative facts and the Court finds that claim two relates back.[41]

---

[38] *Id.* at 664.

[39] Doc. No. 69 at 7–8.

[40] Petitioner does not argue that his fifth ineffective assistance of counsel claim relates back to his timely filed claims. Even so, the Court notes that claim five would also not relate back to any of the timely filed claims under *Mayle* because it relates to prosecutorial misconduct during closing arguments, which bears no relationship to Petitioner's timely claims.

[41] *See Mayle*, 545 U.S. at 662–64; *Hodge v. United States*, 554 F.3d 372, 377–78 (3d Cir. 2009).

The Court also concludes that claim four relates back because both are based on trial counsel's failure to obtain or present medical evidence corroborating Petitioner's mental illness. Had trial counsel presented the medical evidence to contest the confession at trial, the evidence could have also been used to develop a defense to show Petitioner lacked the specific intent to kill. Thus, the operative facts underlying both claims are similar and arose under a similar circumstance—trial counsel's failure to produce medical evidence that would corroborate Petitioner's mental illness. Under *Mayle*, these claims are tied to a common core of operative facts. Because claim two and claim four relate back to claim one, all three of these claims will be considered in the evidentiary hearing.

### B. Equitable Tolling

Petitioner argues that the claims that do not relate back should be deemed timely due to equitable tolling, arguing that his mental illness prevented him from presenting specific claims in his timely petition.[42]

The statute of limitations "can be tolled when principles of equity would make [its] rigid application unfair."[43] Equitable tolling, however, is an "extraordinary" remedy that should be applied "sparingly."[44] Petitioner must establish "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing."[45] For mental incompetency to be considered an "extraordinary circumstance," the

---

[42] It is also noted that Petitioner does not argue, and the Court does not find, that any of the alternative start date provisions outlined in § 2244(d)(1)(B)–(D) would apply to toll Petitioner's statute of limitations. *See* 28 U.S.C. § 2244(d)(1)(B)–(D) (one-year limitations period may start on the date a state-created impediment was removed, the date the Supreme Court recognized a new and retroactive constitutional right; or the date the factual predicate of the claim could have been discovered with due diligence).

[43] *Urcinoli v. Cathel*, 546 F.3d 269, 272 (3d Cir. 2008) (quoting *Shendock v. Dir. Off. of Worker's Comp. Prog.*, 893 F.2d 1458, 1462 (3d Cir. 1990)).

[44] *Santos v. United States*, 559 F.3d 189, 197 (3d Cir. 2009).

[45] *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

impairment must be so significant as to practically make it impossible for a timely filing of any habeas petition.[46]

Here, Petitioner was able to file a petition and file it on time; no extraordinary circumstance prevented Petitioner from raising his claims. As Petitioner was able to file a timely petition that raised coherent claims, equitable tolling cannot be used to parse the individual claims that were or were not included.[47] As the R&R concluded, the record shows that Petitioner understood the importance of filing within the limitations period, had the wherewithal to approach inmates who had helped others draft habeas petitions in the past, and engaged in discussions with them relating to his potential claims.[48] With this assistance, Petitioner was able to file a timely petition. Petitioner's objection based on his, or his jailhouse lawyers' misunderstanding or ignorance of the law is not a basis for equitable tolling.[49] The R&R fully examined the totality of the circumstances surrounding Petitioner's timely and untimely filings and correctly determined that Petitioner's mental incompetency was not a basis for equitable tolling in this case.

---

[46] *See e.g.*, *Wilkins v. Lane*, No. 16-5845, 2017 WL 4400760, at *4 (E.D. Pa. Sept. 29, 2017) ("'[A] mental condition that burdens but does not prevent a prisoner from filing a timely petition does not constitute extraordinary circumstances justifying equitable tolling.' A mental impairment 'even rising to the level of insanity' may not be enough to warrant equitable tolling. Even the combination of a pro se plaintiff with a mental incapacity is not enough for equitable tolling. The mental condition must have 'made it impossible to file a petition on time.'"); *Briss v. Nogan*, No. 15-5727, 2018 WL 2254562, at *5 (E.D. Pa. May 16, 2018) ("Petitioners cannot simply allege that mental impairment prevented timely filing. Rather, they must show that disability *actually* hindered filing of a timely petition.").

[47] Doc. No. 64 at 9–15.

[48] *See* Aff. of Charles Schrott, ¶¶ 4, 6, attached to Reply Brief as "Exhibit C"; Aff. of Daniel Howard, ¶¶ 4, 5 attached to Reply Brief as "Exhibit B."

[49] *Centeno v. Winstead*, No. 08-5509, 2009 WL 5215394, at *4 (E.D. Pa. Dec. 24, 2009) (citing *Jones v. Morton*, 195 F.3d 153, 160 (3d Cir. 1999), *Sch. Dist. of Allentown v. Marshall*, 657 F.2d 16, 21 (3d Cir. 1981), and *Eckles v. Erikson*, No. 06-1870, 2009 WL 292585, at *5 (E.D. Pa. Feb. 5, 2009)).

## C. Evidentiary Hearing

Although claims one, two, and four were not raised during Petitioner's PCRA appeal, Petitioner contends that PCRA counsel's ineffectiveness caused his procedural default, which would allow the Court to consider the claim.[50] Thus, the R&R recommended an evidentiary hearing be held to determine the nature of Petitioner's PCRA counsel's investigation into trial counsel's introduction of medical records at the suppression hearing and trial.

Under the Supreme Court's decision in *Martinez v. Ryan*, a petitioner can establish that ineffective assistance of counsel "caused" a procedural default by showing (1) in the initial-review collateral proceeding,[51] counsel was ineffective; and (2) the underlying claim of "ineffective assistance at trial is substantial," meaning it has "some merit."[52] The Court agrees with the R&R's conclusion that the first *Martinez* prong cannot be resolved without an evidentiary hearing to determine whether PCRA counsel had any strategic reason for withholding those claims of trial counsel's ineffectiveness.[53] This hearing is also necessary to assess PCRA counsel's investigation of trial counsel's representation because the record lacks evidence pertaining to these two inquiries.

Further, an evidentiary hearing is necessary to determine whether Petitioner satisfies the second *Martinez* prong. The state court did not hold an evidentiary hearing on trial counsel's

---

[50] A federal court may consider a procedurally defaulted claim only if a petitioner demonstrates: (1) a legitimate cause for the default an actual prejudice from the alleged constitutional violation; or (2) a fundamental miscarriage of justice from a failure to review the claim. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *see also Davila v. Davis*, 137 S.Ct. 2058, 2065 (2017) (discussing the cause and prejudice standard, and finding "[t]o establish cause . . . the prisoner must show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.") (internal quotations and citations omitted).

[51] The PCRA proceeding constitutes an "initial-review collateral proceeding."

[52] *Martinez v. Ryan*, 566 U.S. 1, 14, 17 (2012).

[53] *See Bey v. Superintendent Greene SCI*, No. 15-2863, 2017 WL 1905092, at *9 (3rd Cir. May 10, 2017) (finding "no strategic reason" why counsel omitted an ineffectiveness claim).

13

efforts to suppress or challenge Petitioner's confession or trial counsel's failure to obtain an opinion from Dr. O'Brien on Petitioner's mental state at the time of his *Miranda* waiver. A hearing will allow the Court to hear evidence on these issues as well as any other evidence relating to Petitioner's mental state at the suppression hearing and trial.

Additionally, an evidentiary hearing is necessary because Petitioner was prejudiced by the suppression court adopting the interrogating officer's unrebutted testimony that "[a]lthough [Petitioner] indicated he had a mental health history, he did not ramble or say anything inappropriate, and he answered all questions quietly and in a matter-of-fact manner."[54] Dr. O'Brien's newer report directly rebuts this testimony stating that available psychiatric evidence would have shown that Agent Gallen misinterpreted Petitioner's demeanor as "evidence of wellness rather than psychiatric illness."[55]

## IV. CONCLUSION

For the reasons stated above, an evidentiary hearing will be held on claim one as recommended by the R&R and on claims two and four for the reasons discussed in this Memorandum Opinion. An order will be entered.

---

[54] N.T., Suppression 1/23/2006 at 82.
[55] 8/1/2016 Dr. O'Brien Letter at 3.