**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **DEREK WAYNE JACKSON,**<br><br>    **Petitioner,**<br><br>    **v.**<br><br>**BRIAN COLEMAN,** *et al.*,<br><br>    **Respondents.** | **CIVIL ACTION NO.  13-5932** |

<u>**MEMORANDUM OPINION**</u>

**Rufe, J.**                                                                                          **December 23, 2025**

Before the Court is Petitioner Derek Wayne Jackson's Amended Petition for Writ of

Habeas Corpus under 28 U.S.C. § 2254. After reviewing the Report and Recommendation

("R&R") issued by the Magistrate Judge and the objections thereto, the Court entered an order

scheduling an evidentiary hearing for three of the five claims in the Petition and deferring a final

ruling on the Petition.[1] Upon consideration of all records and objections in this case, the

testimony presented at the parties' November 4, 2021 evidentiary hearing, and the additional

evidence that the parties submitted by stipulation thereafter, the Court will grant the Petition for

the reasons stated herein.

**I.    BACKGROUND**

The R&R accurately sets forth the facts and procedural history of this case, and the Court

adopted this factual and procedural background in its Memorandum Opinion dated September 3,

2021.[2] The relevant portions of that background are summarized below and, where relevant, are

---

[1] *Jackson v. Coleman*, 558 F. Supp. 3d 210 (E.D. Pa. Sept. 3, 2021) [Doc. No. 90]. The five claims referred to are the subset of claims on which Petitioner decided to proceed when he filed his Memorandum of Law in Support of Petition for Writ of Habeas Corpus. Pet.'s Mem. L. at 4 [Doc. No. 63]. All other claims were withdrawn.

[2] R&R at 2-8 [Doc. No. 64]; *Jackson v. Coleman*, 558 F. Supp. 3d 210, 213 n.2 (E.D. Pa. Sept. 3, 2021) [Doc. No. 90].

supplemented by facts drawn from new record evidence that was presented after the publication of the Memorandum Opinion.

On April 19, 2005, Petitioner was arrested and interrogated for the murder of his mother.[3] Petitioner waived his Miranda rights and gave a full confession.[4] At the time, he informed law enforcement that he had been treated for mental disorders but was not regularly taking his prescribed medications.[5] Petitioner's court-appointed trial counsel obtained an expert psychiatrist, John S. O'Brien II, M.D., J.D., who opined that Petitioner had schizoaffective disorder with "auditory hallucinations and paranoid ideation and possible delusions."[6] Dr. O'Brien found Petitioner competent to stand trial and that, at the time of the offense, Petitioner could "understand the nature, quality and wrongfulness of his acts" despite being unable to "conform his conduct to the requirements of law."[7] In forming his opinions, Dr. O'Brien relied upon Petitioner's psychiatric records from 2001 to 2004.[8] However, trial counsel did not obtain, and therefore did not provide to Dr. O'Brien, psychiatric records corresponding to the eight months leading up to the murder.[9]

On June 15, 2005, Petitioner was arraigned on four Bills of Information charging him with crimes including first-degree murder, 18 Pa. Cons. Stat. Ann. § 2502(a), and tampering with or fabricating physical evidence, 18 Pa. Cons. Stat. Ann. § 4910(1).[10] The bill corresponding to

---

[3] R&R at 2 [Doc. No. 64]; Crim. Compl. at 3-4 [Doc. No. 8-2].

[4] R&R at 2 [Doc. No. 64]; 1/23/06 Suppr. Hr'g Tr. at 12, 29-34 [Doc. No. 8-47]; Trial Exs. C-1, C-2 [Doc. No. 8-50 at 105-16].

[5] R&R at 2 [Doc. No. 64]; 1/23/06 Suppr. Hr'g Tr. at 44-45 [Doc. No. 8-47]; Trial Ex. C-2 [Doc. No. 8-50 at 106-16].

[6] R&R at 2 [Doc. No. 64]; Am. PCRA Pet., Ex. A [Doc No. 8-116 at 14].

[7] R&R at 2-3 [Doc. No. 64]; Am. PCRA Pet., Exs. A, B [Doc No. 8-116 at 9-19].

[8] Am. PCRA Pet., Exs. A, B [Doc No. 8-116 at 9-19].

[9] Am. PCRA Pet., Exs. A, B [Doc No. 8-116 at 9-19]; Pet.'s Sealed App'x at 232-236 [Doc. No. 63-1].

[10] R&R at 3 [Doc. No. 64]; 6/15/05 Arraignment Tr. at 2-5 [Doc. No. 8-17].

the latter charge mistakenly listed the elements of a different crime, tampering with public records or information, 18 Pa. Cons. Stat. Ann. § 4911.[11]

On August 22, 2005, trial counsel moved to suppress all statements from the arrest and interrogation due to serious mental illness that prevented Petitioner from understanding his constitutional rights.[12] At the suppression hearing, Detective Samuel Gallen testified that Petitioner had understood his Miranda waiver.[13] Although Petitioner testified that he was not read his Miranda rights, trial counsel did not present additional evidence that Petitioner lacked the capacity to understand and remember those rights.[14] Specifically, trial counsel did not put forward evidence of Petitioner's psychiatric hospitalizations, did not introduce the reports of Dr. O'Brien and other physicians of Petitioner's history of psychosis, and did not call any other witnesses.[15] The trial court denied Petitioner's suppression motion, finding that Petitioner's testimony did not "call[] into question . . . his ability to understand the interrogation."[16] The trial court accordingly determined that Petitioner waived his right to counsel and right against self-incrimination voluntarily, knowingly, and intelligently.[17]

The Commonwealth then moved to preclude Petitioner from presenting psychiatric evidence at trial.[18] Trial counsel did not oppose the motion because (1) Dr. O'Brien had opined that Petitioner was legally sane at the time of the murder; and (2) Petitioner had not authorized

---

[11] R&R at 3 [Doc. No. 64]; Bills of Inf. [Doc. Nos. 8-14, 8-15].

[12] R&R at 3-4 [Doc. No. 64]; Omnibus Mtn. Suppr. at 2-3 [Doc. No. 8-24]. With his suppression motion, trial counsel also filed a notice of insanity defense, but he ultimately declined to proceed with such a defense. 1/23/06 Suppr. Hr'g Tr. at 89-90 [Doc. No. 8-47].

[13] R&R at 4 [Doc. No. 64]; 1/23/06 Suppr. Hr'g Tr. at 45-49 [Doc. No. 8-47].

[14] R&R at 4 [Doc. No. 64]; *see generally* 1/23/06 Suppr. Hr'g Tr. [Doc. No. 8-47].

[15] R&R at 4 [Doc. No. 64]; *see generally* 1/23/06 Suppr. Hr'g Tr. [Doc. No. 8-47].

[16] R&R at 4 [Doc. No. 64]; 1/23/06 Suppr. Hr'g Tr. at 83-84 [Doc. No. 8-47].

[17] R&R at 4 [Doc. No. 64]; 1/23/06 Suppr. Hr'g Tr. at 83-84 [Doc. No. 8-47].

[18] R&R at 4 [Doc. No. 64]; 1/23/06 Suppr. Hr'g Tr. at 89 [Doc. No. 8-47].

trial counsel to admit to the criminal act, which trial counsel believed to be necessary to advance an insanity defense or diminished capacity defense supported by psychiatric evidence.[19] The trial court granted the Commonwealth's motion.[20]

At trial, the Commonwealth introduced Petitioner's confession, which included Petitioner's acknowledgement to investigating officers of his history of serious mental illness.[21] Trial counsel did not introduce any evidence of Petitioner's psychiatric conditions at trial— whether to discredit the confession or at any other juncture.[22] During closing arguments, despite the later order barring psychiatric evidence, the prosecution attempted to exploit the dearth of psychiatric evidence in its favor, stating: "Do you think for one nanosecond that if [Petitioner] had any psychiatric testimony to back that up, that you wouldn't have heard it?"[23] Trial counsel did not object to that statement, nor did he move for a mistrial or request a curative instruction.[24] No curative instruction was given.[25] Petitioner was found guilty of first-degree murder, possessing instruments of crime, abusing a corpse, and tampering with or fabricating physical evidence.[26] He was sentenced to life imprisonment.[27] On direct appeal, he argued that the trial court erred in denying his motion to suppress, and the Pennsylvania Superior Court affirmed.[28] Petitioner did not appeal further.

---

[19] R&R at 4-5 [Doc. No. 64]; 1/23/06 Suppr. Hr'g Tr. at 89-90 [Doc. No. 8-47]; 11/4/21 Evid. Hr'g Tr. at 29, 31-32 [Doc. No. 116].

[20] R&R at 5 [Doc. No. 64]; 1/23/06 Suppr. Hr'g Tr. at 91-92 [Doc. No. 8-47].

[21] R&R at 5 [Doc. No. 64]; 1/24/06 Tr. at 37-55 [Doc. No. 8-49]; Trial Ex. C-2 [Doc. No. 8-50 at 106-16].

[22] R&R at 5 [Doc. No. 64]; *See generally* 1/24/06 Tr., 1/25/06 Tr. [Doc. Nos. 8-49, 8-50].

[23] R&R at 6 [Doc. No. 64]; 1/25/06 Tr. at 20, 23 [Doc. No. 8-50].

[24] 1/25/06 Tr. at 23 [Doc. No. 8-50].

[25] *See generally* 1/25/06 Tr. [Doc. No. 8-50].

[26] R&R at 6 [Doc. No. 64]; 1/25/06 Tr. at 94-95 [Doc. No. 8-50].

[27] R&R at 6 [Doc. No. 64]; Sentencing Tr. at 17-18 [Doc. No. 8-65].

[28] R&R at 6 [Doc. No. 64]; *See Commonwealth v. Jackson*, 1371 EDA 2006 (Pa. Super. Ct. 2007) [Doc. No. 8-88].

Petitioner then filed a timely petition under the Pennsylvania Post Conviction Relief Act ("PCRA") and later amended that petition after being appointed PCRA counsel.[29] He did not raise issues related to the suppression hearing but rather argued that trial counsel was ineffective in failing to object to the elements of the tampering instruction, which were stated correctly at trial but not in the Bill of Information.[30] The PCRA court dismissed the petition, and the Superior Court affirmed.[31]

On October 7, 2013, Petitioner filed in this Court a timely *pro se* Petition for Writ of Habeas Corpus alleging ineffectiveness because trial counsel did not challenge the discrepancy in the record concerning the tampering instruction.[32] He filed a timely *pro se* supplement to his Petition for Writ of Habeas Corpus on November 22, 2013, adding an ineffective assistance claim based on trial counsel's failure to present psychiatric evidence at the suppression hearing.[33] Upon obtaining habeas counsel in 2015, Petitioner filed the Amended Petition that is currently pending.[34] As stated in a subsequently filed Memorandum of Law, Petitioner decided to proceed on a subset of the claims in the Amended Petition.[35] As such, he argues that he was cumulatively prejudiced by trial counsel's failures to (1) present evidence to suppress his confession; (2) offer evidence at trial to discredit his confession; (3) object to the tampering instruction; (4) present mental health evidence at trial showing he lacked the specific intent to kill; and (5) seek a

---

[29] R&R at 7 [Doc. No. 64]; *See* Initial PCRA Pet. [Doc. No. 8-92]; Am. PCRA Pet. [Doc. No. 8-116].

[30] R&R at 7 [Doc. No. 64]; *See generally* Am. PCRA Pet. [Doc. No. 8-116]. Petitioner also requested in the amended PCRA petition that the PCRA court appoint an expert to re-evaluate his competency. *See* Am. PCRA Pet. [Doc. No. 8-116]; Pet. Appt. For. Psych. [Doc. No. 8-113].

[31] R&R at 7 [Doc. No. 64]; 6/16/11 Final Order [Doc. No. 8-119]; *Commonwealth v. Jackson*, 1904 EDA 2011 (Pa. Super. Ct. 2012) [Doc. No. 8-135].

[32] R&R at 7 [Doc. No. 64]; Pet. Habeas Corpus [Doc. No. 1]. *See* 28 U.S.C. § 2254.

[33] R&R at 7 [Doc. No. 64]; Supplement Pet. Habeas Corpus [Doc. No. 2].

[34] R&R at 1, 7-8 [Doc. No. 64]; Am. Pet. Habeas Corpus [Doc. No. 30].

[35] Pet.'s Mem. L. at 4 [Doc. No. 63].

mistral due to prosecutorial misconduct.[36] Petitioner also included a sixth claim asserting cumulative error.

The R&R recommended that Claim 3 be dismissed for lack of merit and that Claims 2, 4, and 5 be dismissed as time-barred because they were raised after the one-year limitations period[37] had expired and because the doctrine of equitable tolling did not apply.[38] The R&R recommended that an evidentiary hearing be held as to Claim 1 to assess whether trial counsel was ineffective in failing to present psychiatric evidence to suppress Petitioner's confession and, relatedly, whether PCRA counsel was ineffective due to an investigation of trial counsel's representation that Petitioner alleged to be insufficient.[39]

After objections were filed and briefed, on September 3, 2021, the Court issued an opinion disagreeing with the R&R's recommendation.[40] The Court ordered that an evidentiary hearing be held as to each of Claims 1, 2, and 4, because Claims 2 and 4 related back to Claim 1.[41] The Court deferred its final ruling on all of Petitioner's claims.[42] At the evidentiary hearing, held on November 4, 2021, before this Court, Petitioner introduced testimony solely from his trial counsel.[43] On February 28, 2022, the parties submitted additional stipulated facts and

---

[36] The Court follows the convention of the R&R by treating Claim A in Petitioner's Memorandum of Law as two separate claims—one for trial counsel's failure to put forth evidence to suppress the inculpatory statements before trial and one for failure to discredit his statements at trial.

[37] *See* 28 U.S.C. § 2244(d)(1).

[38] R&R at 9-15, 20-21 [Doc. No. 64].

[39] R&R at 15-20, 22 [Doc. No. 64].

[40] *Jackson v. Coleman*, 558 F. Supp. 3d 210 (E.D. Pa. Sept. 3, 2021) [Doc. No. 90].

[41] *Id.* at 216-18.

[42] *Id.* at 220; 9/3/21 Order [Doc. No. 91]. The Court found that Claims 1, 2, and 4 related back to the same operative core of facts such that they were timely and reviewable. *Jackson v. Coleman*, 558 F. Supp. 3d 210, 216-18 [Doc. No. 90].

[43] 11/4/21 Evid. Hr'g Tr. [Doc. No. 93].

evidence, including a 2016 report of Dr. O'Brien and a declaration of PCRA counsel, which were each jointly submitted in lieu of live testimony, without objection.[44]

## II.    LEGAL STANDARDS

### A.    Review of Habeas Corpus Petitions Under the AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts may grant writs of habeas corpus to petitioners whose placement in state custody is "in violation of the Constitution or laws or treaties of the United States."[45] In evaluating a petition that was referred to a magistrate judge, the district court "shall make *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."[46] The district court "may accept, reject, or modify . . . the findings or recommendations made by the magistrate judge" and, as the Court has here, "may also receive further evidence."[47] Nonetheless, factual determinations of the state court " 'shall be presumed to be correct,' unless the petitioner rebuts the presumption of correctness by clear and convincing evidence."[48]

As a prerequisite for relief under the AEDPA, a petitioner must exhaust state court remedies that are available for effectively safeguarding his rights.[49] To exhaust those remedies, a petitioner must fairly present his claims in "one complete round of the State's established

---

[44] 2/28/22 Joint Stipulations [Doc. No. 98].

[45] 28 U.S.C. § 2254(a)).

[46] 28 U.S.C. § 636(b)(1); *see also* E.D. Pa. Loc. R. Civ. P. 72.1(IV)(b).

[47] 28 U.S.C. § 636(b)(1).

[48] *Howell v. Superintendent Rockview SCI*, 939 F.3d 260, 264 (3d Cir. 2019) (quoting *Lambert v. Blackwell*, 387 F.3d 210, 234 (3d Cir. 2004)); *see also* 28 U.S.C. § 2254(e)(1).

[49] 28 U.S.C. § 2254(b).

appellate review process."[50] If a petitioner cannot prove a claim is exhausted, then the claim is procedurally defaulted and is generally unreviewable.[51] However, as an exception, procedurally defaulted claims are reviewable if a petitioner shows cause for the default and actual prejudice from the violation of federal law, or demonstrates that a failure to consider the claim will result in a fundamental miscarriage of justice.[52]

Provided that a claim is reviewable under the AEDPA, courts will grant relief only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[53] A decision is, "contrary to" clearly established federal law, if the state court " 'applies a rule that contradicts the governing law set forth' in Supreme Court precedent, or if it 'confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different' from that reached by the Supreme Court."[54] Alternatively, an "unreasonable application" of clearly established federal law occurs where "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."[55] "The 'unreasonable

---

[50] *O'Sullivan v. Boerkel*, 526 U.S. 838, 845, 848 (1999); *see also Rodland v. Superintendent of SCI Houtzdale*, 837 F. App'x 915, 919 (3d Cir. 2020); 28 U.S.C. § 2254(c).

[51] *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999).

[52] *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

[53] 28 U.S.C. § 2254(d).

[54] *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)) (alteration and citation omitted).

[55] *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable."[56]

### B.    The Ineffective Assistance of Counsel Standard

The Sixth Amendment guarantees criminal defendants "the right to the effective assistance of counsel."[57] As explained in *Strickland*,[58] a successful ineffectiveness claim requires establishing (1) that "counsel's performance was deficient," and (2) that the deficient performance prejudiced the petitioner by depriving him of a fair trial.[59]

To satisfy the deficient performance requirement, the petitioner must show that counsel's representation "falls below 'an objective standard of reasonableness.' "[60] When evaluating counsel's performance, courts presume that "counsel's conduct falls within the wide range of reasonable professional assistance."[61] To satisfy the prejudice requirement, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[62] A "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome."[63] This analysis must take into account "the totality of the evidence before the judge or jury."[64] If the state court already adjudicated the merits of the ineffectiveness claim, review of that claim in federal court is

---

[56] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (citation omitted).

[57] *Garza v. Idaho*, 139 S. Ct. 738, 743 (2019) (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)).

[58] 466 U.S. 668.

[59] *Id.* at 687; *see also Williams v. Superintendent Green SCI*, 112 F.4th 155, 166-67 (3d Cir. 2024).

[60] *Superintendent Green SCI*, 112 F.4th at 167 (quoting *Strickland*, 466 U.S. at 688).

[61] *Strickland*, 466 U.S. at 689.

[62] *Id.* at 694.

[63] *Id.*

[64] *Id.* at 695.

"doubly" deferential.[65] The question is no longer "whether counsel's actions were reasonable" but rather "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."[66]

## III.    DISCUSSION

The Court's examination of Petitioner's claims proceeds in two parts. First, the Court analyzes the claims stemming from the core issue in this case: trial counsel's failure to investigate and present psychiatric evidence. Those claims are evaluated upon the updated evidentiary record, which includes the testimony presented at the November 4, 2021 evidentiary hearing and the stipulations presented thereafter. Second, the Court considers Claim 3, which is unrelated to trial counsel's nonuse of psychiatric evidence. That claim is evaluated based on the record existing when the September 3, 2021 Memorandum Opinion was issued.

### A.    Trial Counsel's Failure to Investigate, Present, and Invoke Psychiatric Evidence Throughout the Trial Court Proceedings

In Claims 1, 2, and 4, Petitioner alleges that trial counsel was ineffective in failing to investigate, develop, and present psychiatric evidence of Petitioner's mental illness.[67] In Claim 5, Petitioner argues that trial counsel provided ineffective representation by failing to object, or seek a curative instruction or mistrial, when the prosecution untruthfully suggested to the jury that no such psychiatric evidence existed.[68]

---

[65] *Harrington v. Richter*, 562 U.S. 86, 105 (2011); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013).

[66] *Harrington*, 562 U.S. at 105.

[67] Pet.'s Mem. L. at 4-34 [Doc. No. 63].

[68] Pet.'s Mem. L. at 35-41 [Doc. No. 63].

1.    Relation Back

Having determined that Claims 2 and 4 relate back to Claim 1 so as to be timely under the one-year limitations period,[69] the Court must likewise make a ruling on whether Claim 5 relates back to Claim 1.

Claim 5 does relate back. In *Mayle v. Felix*, the Supreme Court held that an untimely habeas claim relates back to a timely claim if the claims are "tied to a common core of operative facts."[70] In *Mayle*, the Court rejected the petitioner's argument that a Fifth Amendment claim stemming from the trial judge's admission of his pretrial statements related back to a timely Sixth Amendment claim challenging the trial judge's admission of an informant's out-of-court statements.[71] The Court reasoned that the events of the two different claims were "separate in 'both time and type'" and therefore did not "ar[ise] out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."[72] "The Court further explained that two claims merely arising from the same 'conviction or sentence' cannot be enough to satisfy the relation back standard."[73]

To explain when relation back does apply, the Supreme Court cited *Woodward v. Williams*.[74] There, the Tenth Circuit concluded that an untimely claim related back where the petitioner, having challenged the trial court's admission of his recanted statements, amended his petition to challenge the court's refusal to admit evidence that the statements were recanted.[75] To

---

[69] *See Jackson v. Coleman*, 558 F. Supp. 3d 210, 216-18 (E.D. Pa. 2021) [Doc. No. 90]; 28 U.S.C. § 2244(d)(1).

[70] *Mayle v. Felix*, 545 U.S. 644, 647 (2005).

[71] *Id.* at 650.

[72] *Id.* at 656-657.

[73] *Wilkerson v. Superintendent Fayette SCI*, 871 F.3d 221, 237 (3d Cir. 2017) (quoting *Mayle*, 545 U.S. at 657).

[74] *Mayle*, 545 at 664 n.7.

[75] *Woodward v. Williams*, 263 F.3d 1135, 1142 (10th Cir. 2001).

relate back, therefore, the substantive ruling or action under challenge need not be identical for both claims, so long as the underlying operative facts are the same. The Ninth Circuit also adheres to this understanding, writing that "the 'time and type' language in *Mayle* refers not to the claims, or grounds for relief" but rather to "*the facts that support those grounds*."[76] Moreover, as the Third Circuit explained in *United States v. Santarelli*, " '[i]n searching for a common core of operative facts in the two pleadings,' courts should remain aware that the touchstone for relation back is fair notice, because [Federal Rule of Civil Procedure] 15(c) is premised on the theory that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide."[77]

Here, though Petitioner did not file a timely habeas claim challenging the statements in the prosecution's closing argument, the facts supporting that claim align with those underlying Claims 1, 2, and 4. All four claims embody trial counsel's failure to integrate Petitioner's deteriorated mental state into his defense, and, as in *Woodward*, the untimely Claim 5 implicates the same body of evidence as the other claims. As further proof of the claims' interrelationship, the prosecutor was positioned to impugn the defense for not presenting psychiatric evidence only due to his own pretrial motion barring that evidence.[78] According to the allegations in the Petition, whether by trial counsel's ignorance or the prosecutor's deception, Petitioner's access to a psychiatric defense was unfairly stifled and then exploited against him in a single, interconnected transaction. Consistent with *Santarelli*, Claim 1 notified the Commonwealth that the absence of psychiatric evidence was at issue, thus alerting the Commonwealth to the

---

[76] *Ha Van Nguyen v. Curry*, 736 F.3d 1287 (9th Cir. 2013), abrogation on other grounds recognized by, *Bejarano v. Reubart*, 136 F.4th 873, 885 (9th Cir. 2025).

[77] *United States v. Santarelli*, 929 F.3d 95, 101 (3d Cir. 2019), abrogated on other grounds by, *Rivers v. Guerrero*, 605 U.S. 443 (2025).

[78] R&R at 4 [Doc. No. 64]; 1/23/06 Suppr. Hr'g Tr. at 89 [Doc. No. 8-47].

relevance of statements exploiting the dearth in that evidence. In sum, then, the prosecutor's underhanded comments were part of the core of operative facts that Petitioner sought review of when he brought a claim challenging trial counsel's withholding of psychiatric evidence at the suppression hearing. Claim 5 relates back to Claim 1 and is thereby timely.[79]

The Court must next resolve whether the claims are barred from review based on a procedural default and, if not, whether the ineffective assistance claims succeed on the merits.

### 2.    Procedural Default

Petitioner concedes that Claims 1, 2, 4, and 5 are procedurally defaulted because he failed to raise them in his Pennsylvania PCRA petitions.[80] As a threshold matter, the Court must determine whether the procedural default is excusable under *Martinez v. Ryan*[81].

In *Martinez*, the Supreme Court held that a prisoner may demonstrate cause to excuse a procedural default of an ineffective-assistance-of-trial-counsel claim by showing that (1) counsel in the state collateral review proceeding was ineffective under *Strickland*; (2) trial counsel's ineffectiveness was "substantial," giving rise to an ineffectiveness claim of "some merit"; (3) the state collateral proceeding was the first opportunity to challenge trial counsel's effectiveness; and (4) state law required ineffective assistance claims to be raised in the initial collateral proceeding.[82] *Martinez* responded to the concern that, without this exception to the procedural default rule, some meritorious constitutional claims would never receive federal review simply

---

[79] In Claim 5, Petitioner also argues that the prosecutor made improper statements at closing argument by appealing to racial stereotypes. Pet.'s Mem. L. at 37-38 [Doc. No. 63]. Because those statements were not connected to the prosecutor's pretrial efforts to bar psychiatric evidence, they do not qualify as timely under the relation back doctrine.

[80] *See, e.g.*, Pet.'s Mem. L. at 26 [Doc. No. 63].

[81] 566 U.S. 1 (2012).

[82] *Id.* at 14-15; *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (formulating the holding of *Martinez* in terms of the four factors).

on account of counsels' errors.[83] If cause is shown under this standard, courts will "reach the merits of the underlying claim of ineffective assistance of trial counsel," although showing cause does not itself require habeas relief to be granted.[84]

To begin with, prongs three and four of the *Martinez* standard are met. Petitioner's PCRA proceedings were his initial opportunity to raise trial counsel's ineffectiveness, as Pennsylvania law precluded him from doing so on direct appeal.[85] His failure to raise these claims in a PCRA petition resulted in their waiver as a matter of state law.[86]

Next, under the first prong of *Martinez*, Petitioner argues that PCRA counsel was ineffective under *Strickland* by failing to investigate and raise ineffective assistance claims—corresponding to Claims 1, 2, and 4—based on trial counsel's failure to obtain and use psychiatric evidence during the trial court proceedings, and ineffective in failing to raise Claim 5 based on trial counsel's failure to object to prosecutorial misconduct at closing argument.[87] Petitioner asserted that additional evidence would show that PCRA counsel lacked a reasonable basis to omit these claims and that PCRA counsel failed to inquire with trial counsel and Dr. O'Brien to assess the viability of challenging trial counsel's decision to forgo presenting psychiatric evidence.[88]

---

[83] *See Moses v. Dist. Att'y Phila.*, 133 F.4th 251, 258 (3d Cir. 2025).

[84] *Gaines v. Superintendent Benner Twp.*, 33 F.4th 705, 710 (3d Cir. 2022).

[85] *See Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002), abrogated on other grounds by, *Commonwealth v. Bradley*, 261 A.3d 381 (Pa. 2021). Although the Supreme Court of Pennsylvania has since acknowledged exceptions to the general rule that trial counsel's effectiveness can be challenged only on collateral review, *see Commonwealth v. Holmes*, 79 A.3d 562, 563-64 (Pa. 2013), these exceptions were not clearly recognized when Petitioner directly appealed, nor would they necessarily apply now.

[86] *Grant*, 813 A.2d at 738; *see* 42 Pa. Cons. Stat. Ann. § 9544(b).

[87] *See* Pet.'s Mem. L. at 41 [Doc. No. 63].

[88] *See, e.g.*, Pet.'s Mem. L. at 26-29 [Doc. No. 63].

Regarding the first component of *Strickland*, representation falls below an objective standard of reasonableness when "there is simply no rational basis to believe that counsel's failure to argue . . . the issue [before the court] was a strategic choice."[89] Courts also find representation deficient where counsel's "incomplete investigation [is] the result of inattention, not reasoned strategic judgment."[90]

To determine whether PCRA counsel had a strategic basis for Claims 1, 2, and 4, this Court ordered that new evidence be taken.[91] In lieu of live testimony, the parties jointly submitted a signed declaration of PCRA counsel, dated February 25, 2022.[92] That declaration confirms PCRA counsel's failure to adequately investigate. Therein, PCRA counsel states that, after reviewing Dr. O'Brien's reports from 2005 and 2006, PCRA counsel was unable to reach Dr. O'Brien, without further explanation of the steps that he took.[93] The absence of any explanation raises serious concerns about PCRA counsel's efforts. Indeed, the Court ordered the taking of new evidence to elicit PCRA counsel's specific investigative steps.[94] And the Court is skeptical that PCRA counsel was powerless to reach Dr. O'Brien during his representation of Petitioner from 2008 to 2013 because Dr. O'Brien's 2016 report lists the same primary mailing address as the 2005 report.[95] As additional evidence of deficient performance, PCRA counsel

---

[89] *United States v. Mannino*, 212 F.3d 835, 844 (3d Cir. 2000).

[90] *Wiggins v. Smith*, 539 U.S. 510, 534 (2003).

[91] *Jackson v. Coleman*, 558 F.3d 210, 219-20 (E.D. Pa. Sept. 3, 2021) [Doc. No. 90]; 9/3/21 Order [Doc. No. 91]. That order did not provide for additional evidence to be taken to assess PCRA counsel's conduct as to Claim 5. The Court concludes that, without taking further evidence, it is apparent that a miscarriage of justice would result if the Court did not consider Claim 5 together with the other claims, for which the procedural default is excused.

[92] 2/28/22 Joint Stipulations at 2, Ex. S-3 [Doc. No. 98].

[93] 2/28/22 Joint Stipulations, Ex. S-3 ¶ 5 [Doc. No. 98].

[94] *Jackson v. Coleman*, 558 F.3d 210, 219-20 (E.D. Pa. Sept. 3, 2021) [Doc. No. 90]; *See* R&R at 18 [Doc. No. 64].

[95] *See* 2/28/22 Joint Stipulations at 1-2 [Doc. No. 98] (adopting the copy of Dr. O'Brien's 2016 report in Petitioner's Sealed Appendix as part of the evidentiary record); *Compare* Pet.'s Sealed App'x 232-236 [Doc. No. 63-1] *with* Am. PCRA Pet., Ex. A [Doc. No. 8-116 at 9].

offered no testimony suggesting that he attempted to access the missing eight months of Petitioner's psychiatric records leading up to the murder.[96] Nor did PCRA counsel indicate that he spoke with trial counsel about records from those eight months or about trial counsel's reasons for not introducing the psychiatric evidence in trial counsel's possession to suppress Petitioner's confession or to defend Petitioner at trial.[97]

PCRA counsel's failure to describe investigative steps taken to consult Dr. O'Brien and trial counsel about trial counsel's decisions is even more puzzling given his statement, "I thought Mr. Jackson was psychotic," and his statement, "I also thought Mr. Jackson was incompetent at the time of his trial because he was unable to work with counsel."[98] Despite the " 'strong presumption' that an attorney's decision to pursue some claims and decline to pursue others is a tactical choice," that presumption may be overcome where "significant and obvious" issues are omitted in favor of less compelling ones.[99] That is the scenario that occurred here. The two arguments that PCRA counsel chose to present were without merit.[100] However, PCRA counsel did not present—nor did he take any thorough investigative steps to assess—more plausible claims based on trial counsel's failure to obtain, develop, and present psychiatric evidence in the trial court.[101] By identifying Petitioner's obviously impaired mental condition and yet not

---

[96] *See* 2/28/22 Joint Stipulations, Ex. S-3 ¶ 6 [Doc. No. 98].

[97] *See generally* 2/28/22 Joint Stipulations, Ex. S-3 [Doc. No. 98].

[98] 2/28/22 Joint Stipulations, Ex. S-3 ¶ 4[Doc. No. 98].

[99] *Workman v. Superintendent Albion SCI*, 915 F.3d 928, 942 (3d Cir. 2019).

[100] PCRA counsel made an unpersuasive ineffectiveness claim, *see* Am. PCRA Pet. [Doc. No. 8-116], based on trial counsel's nonobjection to the trial court's tampering instruction. *See infra* § III.B (concluding that trial counsel's failure to object to the tampering instruction did not prejudice Petitioner). PCRA counsel also submitted a request for a court-appointed psychiatrist, *see* Pet. Appt. Forensic Psych. [Doc. No. 8-113]; Am. PCRA Pet. [Doc. No. 8-116], that the PCRA court had discretion to deny under Pennsylvania law. *See Commonwealth v. Woods*, 575 A.2d 601, 604 (Pa. Super. Ct. 1990) (holding that there is no constitutional right to a court-appointed expert witness in PCRA proceedings and that trial courts maintain discretion concerning such appointments)

[101] *See infra* § III.A.3(a)-(c), (e) (concluding that trial counsel's representation was unreasonable based on his failures to collect, introduce, and otherwise invoke psychiatric evidence).

investigating all records documenting that condition or the reasons for trial counsel's failure to offer evidence of that condition, PCRA counsel performed deficiently.[102] Although the Court did not order that new evidence be taken on PCRA counsel's representation as to Claim 5, the Court concludes that given the interdependence, discussed above, between Claim 5 and Claims 1, 2, and 4, a miscarriage of justice would ensue if Claim 5 were barred from review despite the prosecutor's plainly objectionable conduct exploiting trial counsel's allegedly deficient performance as to Claims 1, 2, and 4.

Because, as to Claims 1, 2, and 4, PCRA counsel's performance fell below the standard of reasonable professional assistance, the Court must consider whether, but for that substandard performance, there is a reasonable probability that Petitioner would have received a new trial. Based on Third Circuit case law, the Court will evaluate the "prejudice" component of PCRA counsel's ineffectiveness through the lens of the second, and final, *Martinez* prong: whether the underlying claim of ineffective assistance of trial counsel is substantial.[103] The Court therefore turns to examining the merits of Petitioner's ineffective assistance arguments as presented in Claims 1, 2, 4, and 5.

### 3.    Ineffective Assistance of Counsel

Notwithstanding arguments that trial counsel unreasonably withheld the psychiatric evidence that he had obtained, Petitioner contends that trial counsel was deficient by failing to obtain psychiatric records corresponding to this case's most crucial period—the eight months

---

[102] Because PCRA counsel's inattentiveness prevented Petitioner from raising trial counsel's failure to obtain or use psychiatric evidence at trial, PCRA counsel's deficient performance extends to Claims 1, 2, and 4 for purposes of the first *Martinez* prong.

[103] *See Richardson v. Superintendent Coal Twp. SCI*, 905 F.3d 750, 764 (3d Cir. 2018) ("[Petitioner] need show only that his ineffective-assistance claim against [trial counsel] is substantial. This proof of substantiality is also enough to show prejudice resulting from the ineffectiveness of . . . his *state-habeas* counsel."); *see also Brown v. Brown*, 847 F.3d 502, 513 (7th Cir. 2017).

leading up to the murder.[104] Because this allegation permeates Claims 1, 2, and 4, it must be considered in isolation. As a result, when the Court later discusses Claims 1, 2, and 4, it narrows that inquiry to the body of psychiatric evidence that trial counsel had obtained from the investigation he undertook. The Court then ultimately examines whether the deficiencies attributable to trial counsel—taken cumulatively—prejudiced the outcome of his proceedings.[105]

a.    *Failure to Investigate*

Dr. O'Brien's 2016 report illustrates the importance of the missing eight months of psychiatric records. In his 2005 and 2006 reports, which did not consider the missing records, Dr. O'Brien diagnosed Petitioner with Schizoaffective Disorder but opined he "was able to understand the nature, quality and wrongfulness of his acts."[106] He deemed Petitioner competent to stand trial but did not express whether Petitioner could understand his Miranda rights or form an intent to kill.[107] Once Dr. O'Brien received records in 2016 from the missing eight-month period, he opined differently.[108] The missing records included psychiatric records from Penn Behavioral Health "documenting a lengthy history of psychiatric treatment of [Petitioner] between 2003 and April 2005" by Dr. Anita Gordon Bell.[109] The records show that Petitioner's

---

[104] Pet.'s Mem. L. at 6-9, 20-22 [Doc. No. 63].

[105] *Cf. Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir. 2008); *Saranchak v. Sec'y of Pa. Dep't of Corr.*, 802 F.3d 579, 589-92 (3d Cir. 2015).

[106] *See* Am. PCRA Pet., Ex. A [Doc. No. 8-116 at 15]. The materials that Dr. O'Brien consulted in preparation of his 2005 and 2006 reports included the Criminal Complaint; Affidavit of Probable Cause; police investigative materials concerning the murder; records of Petitioner's admission to the Montgomery County Youth Center in 2002 following terroristic threats; other juvenile probation records; medical records of Petitioner's treating physician from October 2002 to August 2003; past psychological evaluations; records from Montgomery County Emergency Services detailing Petitioner's psychiatric hospitalizations between June 2001 and July 2004; and documentation of Petitioner's inpatient psychiatric treatment from July 14, 2004 and July 22, 2004. Am. PCRA Pet., Ex. A [Doc. No. 8-116 at 9-13]. Dr. O'Brien performed his own psychiatric evaluations of Petitioner on June 1, 2005, and January 20, 2006. *See* Am. PCRA Pet., Exs. A, B [Doc. No. 8-116]; Pet.'s Sealed App'x at 232-36 [Doc. No. 63-1].

[107] *See generally* Am. PCRA Pet., Exs. A, B [Doc. No. 8-116].

[108] Pet.'s Sealed App'x at 232-36 [Doc. No. 63-1].

[109] Pet.'s Sealed App'x at 233 [Doc. No. 63-1].

mother called Dr. Bell on March 17 and April 1, 2025.[110] In those calls, Dr. Bell received the following information:

> [Petitioner] talks to himself, writes all the time, and was very paranoid, refusing to eat food that his mother cooks. He also was reported to have stopped attending school and to have become uncooperative with his mother's plans to relocate to Atlanta, Georgia. [Petitioner] had begun to decline to use a toilet and would defecate "in a cooler" and urinate in bottles. It was noted that he blamed his mother for his past psychiatric hospitalizations and police contacts. He was noted to be uncooperative with psychiatric medication prescribed by his primary care physician and non-participatory in any other form of mental health treatment.[111]

From these details, which are admitted in the record by stipulation and without objection, Dr. O'Brien deemed that "in the weeks leading up to the offense, [Petitioner] was not undergoing any mental health treatment and was grossly psychotic."[112] He opined (1) that Petitioner's "untreated gross psychotic symptoms would have likely interfered with his ability to understand his Miranda rights and knowingly, intelligently and voluntarily waive those rights"; and (2) that those symptoms "clouded [Petitioner's] sound thinking and impaired his ability to formulate the intent to kill his mother with a clear and rational mind."[113] Dr. O'Brien concluded that trial counsel's failure to elicit his testimony and, relatedly, to procure the missing medical records, "prevented the trier of fact from appreciating the severity of [Petitioner's] psychiatric condition and the degree to which it likely influenced his ability to waive his Miranda rights and provide a statement and impaired . . . his ability to formulate the intent to kill with a clear and rational mind."[114]

---

[110] Pet.'s Sealed App'x at 233-34 [Doc. No. 63-1].

[111] Pet.'s Sealed App'x at 234 [Doc. No. 63-1].

[112] Pet.'s Sealed App'x at 234 [Doc. No. 63-1].

[113] Pet.'s Sealed App'x at 235 [Doc. No. 63-1].

[114] Pet.'s Sealed App'x at 236 [Doc. No. 63-1].

Because the state court record did not explain why trial counsel did not obtain the missing records, this Court entertained an evidentiary hearing. Accordingly, at the November 4, 2021 hearing, trial counsel was asked, "Did you have any records in that period between August 5th, 2004, and April 19th, 2005?"[115] He responded, "I can only surmise[] that I did not because I certainly would have provided every document in my possession to Dr. O'Brien."[116] He also stated, "I obtained what I could from the county emergency service based on a phone call and identifying myself as the defendant's attorney."[117] He did not offer further explanation.

Trial counsel's unreasonably restricted investigation amounts to constitutionally deficient performance. An incomplete investigation is justifiable if supported by "strategic choices" that are informed by "reasonable professional judgments."[118] Absent such justification, however, failures to reasonably pursue material evidence are indicative of constitutionally substandard performance.[119] Here, trial counsel understood the importance of Petitioner's mental condition, as is apparent from his attempt to suppress Petitioner's confession based on that condition.[120] Despite being squarely alert to the relevance of psychiatric records, trial counsel offered no strategic explanation for why he did not, or could not, obtain the most clearly relevant portion of

---

[115] 11/4/21 Evid. Hr'g Tr. at 16 [Doc. No. 116].

[116] 11/4/21 Evid. Hr'g Tr. at 16 [Doc. No. 116].

[117] 11/4/21 Evid. Hr'g Tr. at 14 [Doc. No. 116].

[118] *Strickland*, 466 U.S. at 690-691.

[119] *See Jacobs v. Horn*, 395 F.3d 92, 101-03, 109 (3d Cir. 2005) (finding that trial counsel's limited investigation into the defendant's psychiatric records contributed to deficient representation, as counsel had reason to know of the defendant's impairments and did not obtain mental records or question family members about the extent of those impairments); *Jermyn v. Horn*, 266 F.3d 257, 306-07 (3d Cir. 2001) (reaching the same conclusion where trial counsel did not attempt to obtain testimonial or documentary evidence of the defendant's traumatic childhood despite being aware of it); *Kimmelman v. Morrison*, 477 U.S. 365, 385 (1986) (deeming trial counsel's performance deficient since counsel's failure to conduct a pretrial investigation "was not based on 'strategy,' but on counsel's mistaken beliefs"); *Parkus v. Delo*, 33 F.3d 933, 935-37 (8th Cir. 1994) (trial counsel's abandonment of investigation into the defendant's mental health after being told that certain records were destroyed was unreasonable given that habeas counsel obtained the missing records "[t]hrough more virgorous pursuit").

[120] Def.'s Omnibus Mot. Suppr. at 2 [Doc. No. 8-24].

those records. Hence, trial counsel performed deficiently through his failure to adequately investigate.

The Court now considers whether trial counsel was also deficient in failing to develop and introduce the psychiatric records in his possession as described in Claims 1, 2, and 4, and thereafter in failing to challenge the prosecutor's denial that any psychiatric evidence existed as argued in Claim 5.

b.    *Claim 1*

In Claim 1, Petitioner asserts that trial counsel was ineffective for failing to utilize evidence at the suppression hearing that would have caused the Court to suppress Petitioner's confession.[121] To show deficient performance as to Claim 1, Petitioner must "overcome the presumption that, under the circumstances," trial counsel's failure to present at the suppression hearing the psychiatric evidence in his possession "might be considered sound trial strategy."[122]

Trial counsel's reason for not using the available psychiatric evidence to suppress the confession is that it would not have helped his case. At the November 4, 2021 evidentiary hearing, trial counsel testified that he expected the trial judge to view other evidence as more relevant on the issue of whether Petitioner's confession and Miranda waiver were made voluntarily, knowingly, and intelligently, such as the twelve-page statement containing the confession, from which trial counsel thought that "[Petitioner] seemed to understand what was happening."[123] Trial counsel also believed that, if introduced, the 2005 and 2006 reports of Dr. O'Brien "would establish that [Petitioner had] sufficient mental capacity when he confessed."[124]

---

[121] Pet.'s Mem. L. at 10-16, 20-26 [Doc. No. 63].

[122] *See Strickland*, 466 U.S. at 690 (quotation marks omitted).

[123] 11/4/21 Evid. Hr'g Tr. at 26 [Doc. No. 116].

[124] 11/4/21 Evid. Hr'g Tr. at 26 [Doc. No. 116].

21

Because Dr. O'Brien opined that Petitioner knew right from wrong, trial counsel apparently reasoned that Dr. O'Brien would have also opined that his Miranda waiver was made voluntarily, knowingly, and intelligently.[125]

Even in light of the deferential standard that the Court applies, trial counsel's decision to withhold psychiatric evidence was unreasonable. Trial counsel's assumption that the trial judge would not find this evidence persuasive does not amount to a reasonable strategic justification. Moreover, the notion that the psychiatric evidence in trial counsel's possession could not strengthen the suppression motion is without support. Although Dr. O'Brien opined that Petitioner was not criminally insane, that lofty determination was not needed to prevail on a motion to suppress, where the Commonwealth shouldered the burden of showing that Petitioner's Miranda waiver was voluntary, knowing, and intelligent.[126] As to those three criteria, the Court grants that trial counsel did not act unreasonably in withholding psychiatric evidence as to involuntariness, which would require evidence of police coercion—a factor absent from the record.[127] But trial counsel did fall short of providing reasonable representation by failing to challenge whether the Miranda waiver was made knowingly and intelligently. A Miranda waiver is knowing and intelligent if "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. [Courts] consider the totality of the surrounding circumstances, including a defendant's age, experience, education, background, and intelligence."[128] Although evidence of Petitioner's psychiatric illnesses would not guarantee

---

[125] 11/4/21 Evid. Hr'g Tr. at 26 [Doc. No. 116].

[126] *United States v. Anthony*, No. 24-2983, 2025 WL 3110789, at *1 (3d Cir. Nov. 6, 2025).

[127] *See id.* (" '[D]efendant's mental condition, by itself and apart from its relation to official coercion should never dispose of' [the voluntariness] issue." (quoting *Colorado v. Connelly*, 479 U.S. 157, 164-65 (1986) (alteration omitted))).

[128] *Id.* at *2 (quotation marks and citation omitted).

a finding that Petitioner's waiver was not knowing and intelligent, that evidence was important to such an analysis and was withheld without strategic explanation.[129] Accordingly, trial counsel performed deficiently as to Claim 1.

c.     *Claim 2*

In Claim 2, Petitioner argues that trial counsel was ineffective in withholding psychiatric evidence at trial that could have been used to discredit his confession.[130]

As one reason for his withholding the evidence, trial counsel testified at the evidentiary hearing, "based on my review of Dr. O'Brien's report . . . I had [no] basis to conclude that [Petitioner] wasn't understanding what was going on that night when he was being questioned."[131] As a broader reason, trial counsel testified that he believed that he was restricted from doing so by the trial court's pretrial order—moved for by the Commonwealth and consented to by trial counsel—that purported to bar psychiatric testimony.[132] Trial counsel explained that he consented to the Commonwealth's motion to preclude psychiatric evidence because of his understanding that, as a matter of law, "[i]f you're not going to advance a plea of not guilty by reason of insanity, you don't get to put on psychiatric evidence at trial."[133]

The Court must initially determine whether trial counsel could have presented psychiatric evidence at trial notwithstanding the pretrial order. The Court later considers Petitioner's

---

[129] *See United States v. Crook*, 502 F.2d 1378, 1381 (3d Cir. 1974) (viewing three psychiatric experts' testimony as significant of whether schizophrenia prevented the defendant from knowingly and intelligently waiving his Miranda rights); *Commonwealth v. Mitchell*, 902 A.2d 430, 452 (Pa. 2006) (mentioning the relevance of a suspect's mental health to the validity of a Miranda waiver). The Court later considers whether the absence of psychiatric evidence affected the outcome of the suppression hearing. *See infra* § III.A.2(f).

[130] Pet.'s Mem. L. at 16-17, 20-26 [Doc. No. 63].

[131] 11/4/21 Evid. Hr'g Tr. at 29 [Doc. No. 116].

[132] 11/4/21 Evid. Hr'g Tr. at 28-29 [Doc. No. 116].

[133] 11/4/21 Evid. Hr'g Tr. at 28 [Doc. No. 116].

argument that psychiatric evidence was admissible to negate specific intent[134] and focuses here on Petitioner's contention that psychiatric evidence was admissible because the prosecution "opened the door" to mental health evidence by introducing Petitioner's confession.[135]

Pennsylvania courts "recognize[] that 'a litigant opens the door to otherwise inadmissible evidence by presenting proof that creates a false impression refuted by otherwise prohibited evidence.' "[136] One common application of the "opening the door" doctrine is when a defendant invokes facts related to their prior bad acts.[137] The "opening the door" doctrine promotes interests such as providing the opposing party a fair opportunity to prevail at trial before having to carry the costs of an appeal and a second trial.[138]

At trial, the Commonwealth introduced a transcript of Petitioner's interrogation, containing his confession.[139] The transcript was authenticated by Detective Gallen, who read into the record portions of the interrogation, including the discussion of Petitioner's mental illnesses:

Q      "Question: Are you physically or mentally ill at this time?"

A      "Answer: I'm not physically ill. I have been treated for different mental disorders, bipolar disorder and schizophrenia."

Q      "Question: Are you taking any medications for these disorders?"

---

[134] *See infra* § III.A.2(d) (discussing the possibility of negating specific intent at trial in the context of Petitioner's Claim 4).

[135] Pet.'s Mem. L. at 22-23 [Doc. No. 63].

[136] *Commonwealth v. Smith*, No. 2774 EDA 2023, 2025 WL 926997, at *7 n.14 (Pa. Super. Ct. Mar. 26, 2025) (quoting *Commonwealth v. Nypaver*, 69 A.3d 708, 716-17 (Pa. Super. Ct. 2013) (alterations omitted)). The Third Circuit describes the doctrine similarly. *See e.g.*, *Healy v. Haverford Twp.*, 462 F. App'x 224, 227 (3d Cir. 2012) ("The doctrine of 'opening the door,' sometimes referred to as 'curative admissibility' provides that when one party introduces inadmissible evidence, the opposing party thereafter may introduce inadmissible evidence to rebut or explain the prior evidence." (quoting *Gov't of V.I. v. Archibald*, 987 F.2d 180, 187 (3d Cir. 1993)).

[137] *See, e.g., Commonwealth v. Ford*, 650 A.2d 433, 442 (Pa. 1994) (concluding that defense counsel's questions eliciting the defendant's past adjustments to life in prison opened the door to evidence of the defendant's criminal record); *Commonwealth v. Nabried*, 327 A.3d 315, 324 (Pa. Super. Ct. 2024) (finding that defense counsel's cross-examination questions, implying that an informant lacked history with the defendant, opened the door to prior drug transactions between the two of them).

[138] 1 Robert P. Mosteller et al., *McCormick on Evidence* § 57 (9th ed. 2025).

[139] 1/24/06 Tr. at 33 [Doc. No. 8-49]; Trial Ex. C-2 [Doc. No. 8-50 at 106-16].

A      "Answer: Yes, sir [sic]. I haven't been taking my medications regularly. I
       took it sometime last week."

Q      "Question: Do you understand everything we have been talking about
       tonight and what is occurring?"

A      "Answer: Yes, sir."[140]

The detective also read the part where Petitioner claimed to understand his rights:

Q      "Question: Before we began to talk to you tonight, did we read to you
       your constitutional rights from a form I am showing you?

A      "Answer: Yes, sir."

Q      "Question: Did you fully understand those rights?"

A      "Answer: Yes, sir."

Q       "Question: Did you initial the questions we read to you indicating you
       understood the individual rights?"

A      "Answer: Yes, sir."

Q      "Question: Did you sign the form indicating that you understood your
       rights and agreed to talk with us about the murder of your mother?"

A      "Answer: Yes, sir."

Q      "Question: Do you know what today's date is and what day of the week it
       is?"

A      "Answer: Today is April 19th, 2005."

The revelation that Petitioner admitted his schizophrenia and lapse in taking medications

clearly opened the door for the defense to present psychiatric evidence. That evidence could have

been considered by the jury in their determining whether—as a prerequisite to considering the

evidentiary weight of the confession—Petitioner knowingly, voluntarily, and intelligently

---

[140] In his testimony, Detective Gallen continued to recite portions of the interrogation, including the parts where
Petitioner confessed to the murder and explained the surrounding events. 1/24/06 Tr. at 33-63 [Doc. No. 8-49].

waived his Miranda rights.[141] Instead, Detective Gallen's testimony was received unchallenged and unimpeached, thereby creating a potentially false impression that Petitioner understood his waiver and meant what he said in the confession.

Dr. O'Brien's opinion that Petitioner was sane did not give trial counsel a tactical reason to avoid using psychiatric evidence to discredit the confession. It would have been far less onerous to impeach a witness such as Detective Gallen than to present a meritorious insanity defense at trial. Hence, Dr. O'Brien's conclusion that Petitioner "underst[ood] the nature and wrongfulness of his acts" did not make it futile for trial counsel to discredit the confession. Given the records in his possession and Dr. O'Brien's 2005 and 2006 reports, trial counsel had ample psychiatric evidence to show that the confession was unreliable. That evidence demonstrates Petitioner's numerous involuntary commitments to psychiatric hospitals from 2001 to 2004; hallucinations and paranoia; social isolation; prescription of antipsychotic medications; and myriad mental illness diagnoses including psychotic disorder, bipolar disorder, impulse control disorder, and schizoaffective disorder.[142]

A competent attorney would have presented this psychiatric evidence when the door was opened.[143] By failing to do so, trial counsel performed deficiently.

---

[141] As Pennsylvania courts recognize,

> Despite a pretrial ruling that a confession is voluntary, . . . a criminal defendant nonetheless is entitled to a second opportunity to test the voluntariness of his statement by introducing evidence at trial relating to voluntariness [of the defendant's waiver of his *Miranda* rights] and have the jury consider the question. In this situation, the jury may not assess the evidentiary weight of the confession until it first makes an independent finding that the confession was voluntarily made.

*Commonwealth v. Demora*, No. 2972 EDA 2022, 2024 WL 244629, at *5 (quoting *Commonwealth v. Cameron*, 780 A.2d 688, 693 (Pa. Super. Ct. 2001) (alteration in original).

[142] Am. PCRA Pet., Ex. A [Doc. 8-116 at 10-15].

[143] *See Velasquez v. Superintendent Fayette SCI*, 937 F.3d 151, 161 (3d Cir. 2019) (citing *Hinton v. Alabama*, 571 U.S. 263, 274 (2014)) (noting that an attorney's ignorance regarding a point of law contributes to a finding of unreasonable performance).

  d.  *Claim 4*

In Claim 4, Petitioner contends that trial counsel was ineffective for failing to present psychiatric evidence at trial to rebut the finding of a specific intent to kill.[144] At the evidentiary hearing, trial counsel testified that he did not do so because Pennsylvania law precluded him from challenging a finding of specific intent where Petitioner did not admit to the criminal act.[145] To discern the reasonableness of trial counsel's decisions, the Court refers to the body of Pennsylvania criminal law governing mental infirmities. Three legal concepts are relevant: the defense of legal insanity, the finding of "guilty but mentally ill," and diminished capacity.

Pennsylvania adopts the common law M'Naughten Rule for legal insanity, requiring a defendant to show by a preponderance of the evidence that, "at the time of the commission of the offense, the actor was laboring under such a defect of reason, from disease of the mind, as to not know the nature and quality of the act he was doing or, if the actor did know the quality of the act, that he did not know that what he was doing was wrong."[146] To pursue an insanity defense, the defendant must, as trial counsel initially did, file a notice of insanity no "later than the time required for filing an omnibus pretrial motion provided in Rule 579."[147]

A "guilty but mentally ill" finding is different than a finding of insanity. The trier of fact may find a defendant "guilty but mentally ill" at trial (1) if they "offer[] a defense of insanity"; and if at trial "the trier of facts finds, beyond a reasonable doubt," that (2) "the person is guilty of the offense," (3) "was mentally ill at the time of the commission of the offense," and (4) "was

---

[144] Pet.'s Mem. L. at 30-35 [Doc. No. 63].

[145] 11/4/21 Evid. Hr'g Tr. at 32 [Doc. No. 116]. More precisely, trial counsel stated that Petitioner's refusal to admit to the criminal act precluded him from raising a diminished capacity defense. 11/4/21 Evid. Hr'g Tr. at 32 [Doc. No. 116]. In Pennsylvania, a defense theory seeking to negate specific intent is akin to a diminished capacity defense. *See infra* text accompanying notes 151-156.

[146] 18 Pa. Cons. Stat. Ann. § 315(b).

[147] Pa. R. Crim. P. 568(A)(1).

not legally insane at the time of the commission of the offense."[148] A guilty but mentally ill verdict does not downgrade the offense of conviction to one with a lesser intent.[149] Rather, it "entitle[s] [the defendant] to greater access to mental health treatment while in prison."[150]

Finally, there is diminished capacity. The Pennsylvania diminished capacity defense is "an extremely limited one, which entails the assertion that the defendant's mental condition at the time of the offense was such that he was incapable of forming the specific intent to kill."[151] To prove diminished capacity "only expert testimony on how the mental disorder affected the cognitive functions necessary to form the specific intent is relevant and admissible."[152] As to timing, "[a] defendant who intends to assert the defense of diminished capacity must notify the Commonwealth *before trial* and include documentation offering specificity regarding the nature and extent of the infirmity."[153] The consideration of diminished capacity as a "defense" is somewhat of a misnomer because a finding of diminished capacity does not relieve an actor of criminal liability but instead entails "that the state is unable to prove one of the essential elements of first-degree murder—deliberation and premeditation—because the defendant is without the mental capacity to carry out a plan or design."[154] A successful diminished capacity

---

[148] 18 Pa. Cons. Stat. Ann. § 314(a).

[149] *See, e.g., Commonwealth v. Priset*, No. 1763 MDA 2012, 2013 WL 11254791, at *3 (Pa. Super. Ct. Sept. 4, 2013) ("[A finding of guilty but mentally ill] does not . . . indicate that appellant was unable to form a specific intent to bring about the victim's death. Rather, a person who has been found guilty of first-degree murder but mentally ill has been found to meet the definition of mental illness given by 18 Pa. Cons. Stat. Ann. § 314(c)(1), and also to have committed an 'intentional killing.' " (quotation marks, citation, and alteration omitted)).

[150] *In re Est. of McAndrew*, 131 A.3d 988, 992 (Pa. Super. Ct. 2016).

[151] *Commonwealth v. Williams*, 732 A.2d 1167, 1190 (Pa. 1999).

[152] *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 295 (3d Cir. 1991); *see also Commonwealth v. Weinstein*, 451 A.2d 1344, 1347 (Pa. 1982) ("[P]sychiatric testimony is competent in Pennsylvania on the issue of specific intent to kill if it speaks to mental disorders affecting the cognitive functions necessary to formulate a specific intent.").

[153] *Commonwealth v. Cuevas*, 832 A.2d 388, 393 (Pa. 2003).

[154] *Rock v. Zimmerman*, 959 F.2d 1237, 1245 (3d Cir. 1992).

defense will downgrade first-degree murder to third-degree murder.[155] Crucially, "[a]n accused offering evidence under the theory of diminished capacity concedes general criminal liability."[156]

Here, Petitioner filed a timely notice of insanity defense on August 22, 2005.[157] When the prosecution moved to bar psychiatric evidence, Petitioner conceded that he would no longer pursue an insanity defense, thereby precluding any subsequent jury finding of "guilty but mentally ill."[158] That decision was reasonable, as Dr. O'Brien had deemed Petitioner legally sane and, in any event, Petitioner had not authorized trial counsel to admit criminal liability.

Notwithstanding the court order purporting to bar psychiatric evidence, Petitioner is correct that trial counsel could have introduced psychiatric evidence through a diminished capacity defense to negate the specific intent element of first-degree murder. As the Pennsylvania Supreme Court established in a line of cases beginning with *Commonwealth v. Walzak*, "psychiatric testimony which speaks to the legislatively defined state of mind encompassing a specific intent to kill is admissible."[159] To accept any other conclusion would be "inconsistent with fundamental principles of American jurisprudence," which allow "an accused [to] offer[] relevant and competent evidence to dispute the charge against him," which "includes any of the elements that comprise that charge."[160]

With it clear that trial counsel could have used psychiatric evidence to rebut specific intent, the question is whether trial counsel's failure to do so was tactically justifiable.

---

[155] *Commonwealth v. Travaglia*, 661 A.2d 352, 359 n.10 (Pa. 1995).

[156] *Commonwealth v. Walzack*, 360 A.2d 914, 919-20 (Pa. 1976) (emphasis omitted); *see also Commonwealth v. Williams*, 732 A.2d 1167, 1190 (recognizing that the diminished capacity defense is limited to "those cases in which a defendant admits criminal liability but contests the degree of guilt").

[157] Omnibus Mtn. Suppr. at 89-90 [Doc. No. 8-24].

[158] 1/23/06 Suppr. Hr'g Tr. at [Doc. No. 8-47].

[159] *Commonwealth v. Weinstein*, 451 A.2d 1344, 1347 (Pa. 1982); *Walzack*, 360 A.2d at 919-921.

[160] *Walzack*, 360 A.2d at 921.

On that issue, the Court finds persuasive trial counsel's explanation that he did not use psychiatric evidence to negate specific intent because he was not authorized to admit criminal liability. The Pennsylvania Supreme Court has repeatedly said that counsel is not ineffective for omitting a diminished capacity defense if the defendant did not admit to the underlying act.[161] Here, Petitioner consistently maintained his innocence throughout trial. Notably, he testified that he was "blacked out" around the time of the murder and that the murder was committed by his mother's boyfriend, who then forced Petitioner to clean up the murder scene after the fact.[162] Trial counsel's decision not to use psychiatric evidence at trial to negate specific intent was consistent with his client's claim of innocence and, therefore, did not constitute constitutionally deficient representation.

e.    *Claim 5*

Petitioner contends that trial counsel was further ineffective by declining to object, to move for a mistrial, or to seek a corrective instruction after following prosecutorial statement at closing argument:

> Do you think for one nanosecond that if [the defense] had any psychiatric testimony to back that up, that you wouldn't have heard it? There isn't any. You know why? It doesn't exist.[163]

---

[161] *See Commonwealth v. Hutchinson*, 25 A.3d 277, 342 (Pa. 2011) (collecting cases); *Commonwealth v. Rainey*, 928 A.2d 215, 237 (Pa. 2007) (declining to conclude that counsel was ineffective where the defendant did not admit to shooting the victim); *Commonwealth v. Smith*, 17 A.3d 873, 901-02 (Pa. 2011) (holding that counsel was not ineffective for failing to investigate the defendant's mental health and present a diminished capacity defense because the defendant denied participation in the crime); *see also Jacobs*, 395 F.3d at 101 n.6 (acknowledging that the defendant must admit culpability to assert a diminished capacity defense).

[162] 1/24/06 Tr. at 209-10. [Doc. No. 8-49]. As further evidence of the fact that trial counsel was unauthorized to concede criminal liability, trial counsel testified that he went to significant lengths, including by communicating with Petitioner's family members, to help Petitioner appreciate the reasonableness of a plea offer, whereby Petitioner would have pleaded guilty to third-degree murder. 11/4/21 Evid. Hr'g Tr. at 35-36 [Doc. No. 116]. Trial counsel was unsuccessful, stating: "I did everything I could, but [Petitioner] really stopped communicating with me in terms of his defense." 11/4/21 Evid. Hr'g Tr. at 36 [Doc. No. 116].

[163] 1/25/06 Tr. at 23 [Doc. No. 8-50]; Pet.'s Mem. L. at 36-37 [Doc. No. 63].

In this remark, the prosecutor sought to disingenuously impugn the defense's case. As the Pennsylvania Supreme Court has articulated, "[a] new trial will be granted where the conduct of the prosecution misleads the jury so that they form in their minds a fixed bias such that they cannot fairly weigh the evidence and render a true verdict."[164] The prosecutor's statements were not just misleading—they were wholly untruthful. The same prosecutor had represented the Commonwealth throughout pretrial proceedings[165] and was undoubtably aware of the psychiatric evidence that trial counsel had obtained, as apparent from the prosecutor's motion to exclude that evidence[166] and from his offer to Petitioner to plead "guilty but mentally ill" to third-degree murder.[167] By "abus[ing] [his unique position of trust] in order to prejudice and deliberately mislead the jury,"[168] the prosecutor committed prosecutorial misconduct and deprived Petitioner of a fair trial. Trial counsel did not offer any strategic reason for his failure to challenge the prosecutor's plainly improper comment, and no tactical justification appears in the record. Trial counsel accordingly rendered deficient performance as to Claim 5.

f.    *Cumulative Effect of All Errors*

Because trial counsel performed deficiently by conducting an incomplete investigation, failing to utilize the psychiatric evidence in his possession, and declining to challenge prosecutorial misconduct at closing argument, the Court considers the cumulative effect of those errors under the second *Strickland* prong.

---

[164] *Commonwealth v. Pierce*, 645 A.2d 189, 197 (Pa. 1994).

[165] *See* 5/13/05 Tr. [Doc. No. 8-21]; 6/15/05 Tr. [Doc. No. 8-17]; 10/13/05 Tr. [Doc. No. 8-31].

[166] 4/26/06 Hr'g Tr. at 14-15 [Doc. No. 8-65].

[167] 1/23/06 Suppr. Hr'g Tr. at 89 [Doc. No. 8-47].

[168] *Pierce*, 645 A.2d at 197.

As an initial matter, even if trial counsel had introduced all of the psychiatric evidence now in the record, there is not clearly a reasonable chance that his confession would have been suppressed because of an invalid Miranda waiver. In Pennsylvania, whether a Miranda waiver is given knowingly and intelligently requires a totality of the circumstances analysis, and "there is no *per se* rule that a defendant's waiver of his constitutional rights is defective merely because his mental illness distorts the defendant's perceptions of reality."[169] A Miranda waiver is unlikely to be found constitutionally invalid, unless that impairment is brought to bear during the interrogation,[170] and courts credit other factors when deciding if a waiver is made knowingly and intelligently, such as the suspect's past experience with law enforcement and the clarity of his statements.[171] Here, the trial court found that Petitioner was "alert and responsive to questions" when speaking with law enforcement and that—based on the testimony of Detective Gallen and Petitioner—"he never indicated that he was not aware that he was talking about his mother's death" nor did he "indicate that he didn't understand what was going on." The trial court found that Petitioner "answered all questions quietly and in a matter-of-fact manner," thus not showing any real-time signs of impairment.[172] The Court will not disturb these findings, which are owed

---

[169] *Commonwealth v. Mitchell*, 105 A.3d 1257, 1267 (Pa. 2014) (quotation marks and alteration omitted); *Commonwealth v. Cannon*, 309 A.2d 384, 387 (Pa. 1973) ("The determination of whether a confession is the product of a rational intellect necessitates our consideration of the totality of the circumstances.").

[170] *See Cannon*, 309 A.2d at 387 (evidence of the defendant's schizophrenia did not prevent him from making a knowing, intelligent statement during a confession); *Commonwealth v. Winter*, No. 835 MDA 2016, 2016 WL 7478641, at *4 (Pa. Super. Ct. Dec. 29, 2016) (despite expert testimony on the defendant's mental deficiency, the defendant's familiarity with police interrogation indicated that he gave a knowing, intelligent waiver) *State v. Naranjo*, 321 P.3d 398, 403-04 (Ariz. 2014) ("Mental illness, by itself, will not invalidate an otherwise knowing and intelligent waiver . . . . The test is whether a suspect's mental disabilities render him unable to understand the meaning of his statements." (quotation marks and citations omitted)). *But see Commonwealth v. Cephas*, 522 A.2d 63, 64 (Pa. Super. Ct. 1987) (Miranda waiver was not made knowingly and intelligently where the defendant's schizophrenia was manifested during the interrogation by his kicking of walls, yelling of "inane comments," and "childlike behavior").

[171] *E.g.*, *Winter*, 2016 WL 7478641 at *4 (defendant's prior exposure to the criminal justice system counseled in favor of a knowing, intelligent waiver); *Commonwealth v. Mitchell*, 902 A.2d 430, 452 (Pa. 2006) (police testimony that defendant said he was in control of his faculties weighed in favor of a valid Miranda waiver).

[172] 1/23/06 Suppr. Hr'g Tr. at 82-83 [Doc. No. 8-47].

deference and are presumptively correct.[173] The clarity of mind that Petitioner exhibited during the interrogation makes it unlikely that Dr. O'Brien's testimony or the updated psychiatric records would have altered the trial court's ruling.[174]

Although the confession likely would have survived suppression, trial counsel's failure to put forth psychiatric evidence at trial and to object to the prosecutor's untruthful comments on closing irrevocably undermined the fairness of his trial. While physical evidence would have certainly been probative of an intent to kill,[175] the Commonwealth's evidence of intent was centered on the confession. In its closing argument, the prosecution quoted at length from the confession, which had been admitted through Detective Gallen's testimony, and on which the prosecutor relied to tell the entire story of the case, from the Miranda waiver to the murder itself:

> "[Answer:] I have been advised of my right to remain silent and that anything I say can and will be used against me in the court of law."
>
> . . . .
>
> "[Answer:] I have been [advised] that I have the right to talk to a lawyer before I am questioned and to have him or her present during question[ing]."
>
> . . . .
>
> "With these constitutional rights in mind, are you still willing to talk with us and give us a voluntary statement?"
>
> "Yes, sir."

---

[173] *See Ahmad v. Redman*, 782 F.2d 409, 411-12 (3d Cir. 1986).

[174] *See Winter*, 2016 WL 7478641 at *4 (reaching an analogous conclusion).

[175] The autopsy report indicated that Petitioner's mother was stabbed to death and that she suffered multiple stab wounds, including to her neck, chest, abdomen, and back. Trial Ex. C-32 [Doc. No. 8-51 at 99-105]. On the night of the arrest, law enforcement also took photos of the bedroom where the mother's body was recovered and obtained evidence indicating Petitioner's use of knives to commit the murder. 1/24/06 Tr. at 58, 75-76, 86-87, 117 [Doc. No. 8-49]; Trial Ex. C-3 [Doc. No. 8-51 at 111]. Law enforcement found bleach in the house, as well as lighter fluid, the mother's body wrapped in a plastic bag, and burns and bludgeoning to the body, and further determined that the DNA profiles of the blood in the house matched those of Petitioner and his mother. 1/24/06 Tr. at 76-77, 89, 109, 141-48 [Doc. No. 8-49]; Trial Ex. C-25 [Doc. No. 8-51 at 54-56]. While this physical evidence would have been sufficient for a first-degree murder conviction, *see Commonwealth v. Dominguez*, 299 A.2d 216, 218 (Pa. 1973); *Commonwealth v. Knight*, 156 A.3d 239, 244 (Pa. 2016), it by no means compelled such a finding.

. . . .

"Question: Derek, can you tell me what happened to your mother, Karen Jackson?"

"Answer: Yes, sir, she was murdered today in the morning."

"Question: Who murdered her?"

"Answer: I did."

"Question: Where did you murder Karen Jackson?"

"Answer: In her bedroom in our house, 424 East Moore Street."

"[Question:] Derek, how did you kill your mother?"

"[Answer:] I stabbed her and using a stick to hit her."

. . . .

"[Question:] What did you stab your mother with?"

"Answer: A total of six knives. I had four prepped and I had to get two more. I had four prepped."

"[Question:] What do you mean you had four prepped?"

"[Answer:] I had four prepped. I had them ready to use. I had them on me and I had them—I had already got them from the kitchen. I used four on her and she went down. I then ran down to the kitchen and got two more. They were in the rack."[176]

After mentioning the knives, the prosecutor advised the jury, "Again, evidence of specific intent to kill, not heat of passion or anything like that. He has got four knives. She is on the ground. By the way, I will get to it, he has to go downstairs, get two more, go back and continue stabbing her. Another piece of evidence which shows specific intent to kill."[177] The prosecutor continued:

"[Question:] Derek, tell us about how you attacked Karen and killed her."

---

[176] 1/25/06 Tr. at 20-25 [Doc. No. 8-50].

[177] 1/25/06 Tr. at 26 [Doc. No. 8-50].

. . . .

"[Answer:] This morning I got up around 3:35 in the morning. I went to sleep around 2:00. I was waiting for Karen to do her [morning] routine."

. . . .

"[Question:] What happened this morning?"

"[Answer:] I was downstairs in the living I had heard the water running in the shower. I heard her moving around upstairs. When I started moving around, and heard her in the shower, I went to the kitchen and got the knives. I went upstairs and had to prepare myself. I walked back and forth in the hallway while she was in the shower."

. . . .

"[Question:] Excuse me, what happens after you go upstairs and you are in the hallway and Karen is in the shower?"

"Answer: I walked up and back a few times. I had to pump myself up mentally to complete the murder. She goes in and out of the bathroom a lot. I followed her into the bedroom and she told me that she was getting—she was getting dressed and to get out of the room."

"Question: What happens next?"

"Answer: I then stabbed her in the chest area first. I pulled the knife out and stabbed her again and again. She hit the ground. I stabbed her a total of 17 or 18 times with the first four knives. I then had to run downstairs to get the other two knives. I came back upstairs and stabbed her, like, ten more times with the two other knives."

"[Question:] Did you say anything [during the murder]?"

"[Answer:] For the most part, I was quiet."

. . . .

"[Question:] How did you wrap Karen up?"

"[Answer:] I used pillow cases, sheets covers. I used a sheet to cover up and a quilt. I used trash bags."

. . . .

"[Question:] Aside from the knives you used to stab Karen, what else did you clean?"

"[Answer:] Areas in the room, Karen's bedroom."

"[Question:] What did you? What did you use?"

"[Answer:] Bleach."[178]

As he read these passages, the prosecutor paused to highlight quotes that indicated Petitioner's specific intent to kill. He urged the jury to conclude that, based on the confession, Petitioner was "lying in wait"[179] and "Quiet. Not in a rage. Quiet"[180]—two features that, as the prosecutor argued, made the killing deliberated and premeditated.

If trial counsel had performed reasonably by investigating and introducing evidence of Petitioner's psychiatric hospitalizations, his inconsistent use of medication, his schizoaffective hallucinations, and his deteriorating mental state that rendered him "grossly psychotic" during the time of the offense, there is a reasonable probability that the jury would have found that the Commonwealth did not meet its burden to prove intent beyond a reasonable doubt. Specifically, trial counsel's failures in this regard prejudiced the proceedings in two respects. First, if the jury had knowledge of the abundant evidence highlighting Petitioner's deteriorated mental state at the time of the offense, it would have been compelled to question whether the confession was voluntary, knowing, and intelligent.[181] Second, if it found that the confession cleared that preliminary threshold, there is a reasonable probability that—if Detective Gallen's testimony were impeached by the considerable evidence of Petitioner's diminished mental state—the jury

---

[178] 1/25/06 Tr. at 26-35 [Doc. No. 8-50].

[179] 1/25/06 Tr. at 27 [Doc. No. 8-50].

[180] 1/25/06 Tr. at 30 [Doc. No. 8-50].

[181] *Demora*, 2024 WL 244629 at *5; *Cameron*, 780 A.2d at 693.

would have weighed that evidence less heavily and found that the Commonwealth did not prove an intentional killing.[182] Trial counsel's later failure to challenge the prosecutor's statement disavowing the existence of psychiatric evidence only further infected the outcome.[183]

To be sure, the Commonwealth correctly argues that Petitioner's claim of innocence at trial prevented trial counsel from introducing psychiatric evidence to negate specific intent as part of a diminished capacity defense.[184] But that does not alter the Court's conclusion that Petitioner was prejudiced. The fact that a diminished capacity theory was unavailable did not excuse the Commonwealth from proving each element of first-degree murder beyond a reasonable doubt.[185] As the Petitioner rightly argues in Claim 2, trial counsel could have presented psychiatric evidence under the "opening the door" doctrine to discredit Detective Gallen's testimony and the confession, thus weakening the Commonwealth's proof of the "intent to kill" element. By failing to do so, trial counsel provided deficient performance that, combined with his silence during the prosecutor's improper statement at closing argument, prejudiced the trial in the two ways explained above.

In sum, but for trial counsel's failure to investigate, to present the psychiatric evidence at trial, and to defend his client against prosecutorial comments that improperly exploited the absence of that evidence, there is a reasonable probability that the jury would have acquitted Petitioner of the first-degree murder charge. The Court will therefore grant the Petition as to

---

[182] *Demora*, 2024 WL 244629 at *5; *Cameron*, 780 A.2d at 693.

[183] *See Washington v. Hofbauer*, 228 F.3d 689 (6th Cir. 2000) (determining that counsel's failure to object to prosecutorial misconduct during closing argument warranted habeas relief under *Strickland*).

[184] Commonwealth Response Mem. at 16-17 [Doc. No. 55].

[185] *See In re Winship*, 397 U.S. 358, 361 (1970).

Claims 2 and 5.[186] Because these claims are meritorious, they meet the "substantiality" standard for purposes of excusing the procedural default.

B.    **Trial Counsel's Failure to Object Due to the Court's Instruction on the charge of Tampering with or Fabricating Physical Evidence**

Since the Court did not require additional evidence as to Claim 3, it resolves this claim on the record existing as of the September 3, 2021 Memorandum Opinion and Order. In Claim 3, Petitioner argues that trial counsel was ineffective for failing to object, and seek a mistrial, because the elements in the trial court's tampering with evidence instruction differed from those in the bill of information.[187] Claim 3 was timely filed and exhausted in Petitioner's state court proceedings, but it fails on the merits for three reasons.

First, the elements in the jury instruction for tampering with evidence differed from those in the bill of information only because the jury instruction corrected for an earlier error in the bill. Although the bill listed the statutory section corresponding to tampering with evidence,[188] it listed the elements of a different offense—tampering with public records or information.[189] The jury instruction resolved the error by stating the correct elements for tampering with evidence.[190]

Second, the Court adopts the R&R's conclusion that the Superior Court did not err in finding that Petitioner "was made aware of the correct charge."[191] Indeed, there is competent

---

[186] The Court will not grant the Petition as to Claim 1 because, as discussed, trial counsel's deficiency did not prejudice the outcome of the suppression hearing. The Court attributes the prejudice resulting from trial counsel's incomplete investigation to Claim 2.

[187] Pet.'s Mem. L. at 41-46 [Doc. No. 63].

[188] 18 Pa. Cons. Stat. Ann. § 4910.

[189] Bill of Inf. [Doc. No. 8-14].

[190] The trial court accurately advised the jury, "In order to find the defendant guilty of tampering with physical evidence you must be satisfied that the following elements have been proven beyond a reasonable doubt: First, the defendant believed that an official investigation was pending or about to be instituted. Second, that the defendant altered or concealed or removed evidence. Third, that the defendant did so with the intent to impair its truthfulness or availability in the proceeding that [was] about to be investigated." 1/25/06 Tr. at 80 [Doc. No. 8-50].

[191] R&R at 20 [Doc. No. 64] (quotation marks omitted).

38

record evidence supporting that finding and, contrarily, a lack of record evidence that Petitioner did not know the elements that the Commonwealth was required to prove at trial.[192]

Third, as set forth in the R&R, the Superior Court rejected Claim 3 because, under its interpretation of Pennsylvania Rule of Criminal Procedure 564, the trial court could have responded to a timely objection by allowing the information to be amended, thereby obviating the discrepancy.[193] Accordingly, the intermediate appellate court's ruling rested upon an interpretation of state law, and the Court would require "extraordinary and compelling circumstances"[194] to diverge from that interpretation. The Court finds no such compelling circumstances in the record.

For these reasons, the Court will deny Claim 3.

## IV.    CONCLUSION

The evidence received through the November 4, 2021 evidentiary hearing and stipulations thereafter confirms that there is cause and prejudice under *Martinez v. Ryan* for the Court to review Claims 1, 2, and 4, which were unreasonably omitted by PCRA counsel. The procedural default pertaining to Claim 5 is likewise excusable to avoid a miscarriage of justice that would result from declining to review this claim, which is based on a single, interconnected transaction in which Petitioner's recourse to a psychiatric defense was first stifled by trial counsel's ignorance and then unfairly exploited against him by the prosecution.

---

[192] R&R at 21 [Doc. No. 64]; Crim. Compl. [Doc. No. 8-2]; 4/26/2005 Order [Doc. No. 8-3]; 5/18/2005 DJ Paper [Doc. No. 8-10]. The Court also notes that the correct charge was listed on the trial court docket. [Doc. No. 8].

[193] *See* R&R at 20-21 [Doc. No. 64].

[194] *See* R&R at 20 [Doc. No. 64] ("Such circumstances arise when 'a state-court interpretation of state law . . . appears to be an obvious subterfuge to evade consideration of a federal issue.' " (quoting *Mullaney v. Wilber*, 421 U.S. 684, 691 n.11 (1975)).

The Court further concludes that—as argued by Petitioner in Claims 2 and 5—trial counsel's failure to meaningfully investigate Petitioner's psychiatric history, failure to present psychiatric evidence at trial to discredit Petitioner's confession, and failure to object to prosecutorial misconduct tainted the fairness of his trial court proceedings. Because Petitioner is in custody contrary to clearly established Supreme Court precedent set forth in *Strickland v. Washington* and its progeny, the Court will grant the Petition. An appropriate order will follow.